UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| AMANDA MATHIS and JAMES HAMILTON, | Case No._____ |
| Plaintiffs, | **COLLECTIVE ACTION** |
| v. | **COMPLAINT** |
| DARDEN RESTAURANTS, INC., GMRI, INC., RARE HOSPITALITY INTERNATIONAL, INC., RARE HOSPITALITY MANAGEMENT, INC., CAPITAL GRILLE HOLDINGS, INC., N and D RESTAURANTS, INC., DARDEN SW LLC, and FLORIDA SE, INC., | **JURY TRIAL DEMANDED** |
| Defendants. _____/ | |

Plaintiffs Amanda Mathis and James Hamilton, through undersigned counsel, on behalf of themselves and all persons similarly situated, allege as follows:

**INTRODUCTION**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA") as a result of Defendants' failure to pay Plaintiffs and other similarly-situated employees who are members of the class defined herein all earned wages, including straight time wages, minimum wages, and overtime wages.

2. Plaintiffs bring this action as a collective action pursuant to the FLSA to recover unpaid minimum and overtime wages. Plaintiffs, as a class, are current and former employees of Defendants, who worked or are working as restaurant servers.

3. Plaintiffs and the members of the class presently work or have worked shifts which began when scheduled, but due to Defendants' uniform policies and practices, Plaintiffs and the members of the class were prohibited from clocking in — and, thus, being paid — until customers arrived and were seated.

Higer Lichter & Givner

4.  Defendants further required Plaintiffs and the class members to clock out and continue working after their scheduled or recorded shifts, therefore failing to pay Plaintiffs and the class members for time worked.

5.  Plaintiffs and the class members presently work or have worked in excess of 40 hours in individual work weeks, but were not paid at a rate of 1.5 times their regular rate of pay as required by the FLSA, 29 U.S.C. § 207.

6.  Defendants paid their tipped employees such as Plaintiffs and the class members sub-minimum hourly wages under the tip-credit provisions of the FLSA. Those provisions permit employers of tipped employees to pay wages less than the minimum wage, so long as employers comply with other requirements of the tip-credit provisions.

7.  Plaintiffs were tipped employees who, pursuant to Defendants' uniform policies, were required to perform non-tipped work, such as maintenance and preparatory work, in excess of twenty percent (20%) of their time at work.  Pursuant to the FLSA, 29 U.S.C. §§ 203(m), and (t) and the Department of Labor interpretations thereof, where a tipped employee spends in excess of 20% of the workweek performing general preparation work or maintenance, no tip credit may be taken by the employer for such time spent.  Defendants violated the FLSA by requiring servers to perform non-tipped duties for periods in excess of twenty percent (20%) of their time at work.

8.  Plaintiffs allege on behalf of the class that their unpaid wage claims include: (i) unpaid wages from Defendants for hours worked for which they did not receive wages; (ii) unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay; and (iii) unpaid wages due to Defendant's imposition of a tip credit (which reduced the hourly wages paid to Plaintiffs) when Defendants were not entitled to impose such a

tip credit.

## CLASS DESCRIPTION

9. Plaintiffs bring this suit on behalf of the following similarly situated persons:

All current and former tipped employees in the United States of Defendants who worked at The Capital Grille, Longhorn Steakhouse, Olive Garden, or Red Lobster at any time during the applicable limitations period covered by this Complaint (*i.e.* two years for FLSA violations, and three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who are named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("the Class").

## PARTIES

10. Plaintiff Amanda Mathis is a citizen of the State of Florida who was employed as a server by Darden at multiple Longhorn Steakhouse locations in Florida and Georgia during the statutory period covered by this Complaint. Ms. Mathis lives in this District in Ft. Lauderdale, Florida.

11. Plaintiff James Hamilton is a citizen of the State of Virginia who was employed as a server in Georgia by Darden at its Olive Garden restaurant during the statutory period covered by this Complaint.

12. Defendant Darden Restaurants, Inc. ("Darden") is a corporation organized under the laws of the State of Florida, and has conducted business directly and through its subsidiaries, in the State of Florida.

13. Darden's principal place of business is located at 1000 Darden Center Drive, Orlando, Florida. It regularly conducts business in this judicial district.

14. Defendant GMRI, Inc. ("GMRI") is a corporation organized under the laws of the State of Florida, and has conducted business, directly and through its subsidiaries, in the State of Florida. GMRI regularly conducts business in this judicial district.

15. GMRI does business under the names Olive Garden and Red Lobster.

16. GMRI's principal place of business is located at 1000 Darden Center Drive, Orlando, Florida.

17. Upon information and belief, Darden owns 100% of the stock of GMRI.

18. Defendant RARE Hospitality International, Inc. ("Rare International") is a corporation organized under the laws of the State of Georgia. Rare International regularly conducts business in this judicial district.

19. Rare International does business under the names Longhorn Steakhouse and The Capital Grille.

20. Rare International's principal place of business is located at 1000 Darden Center Drive, Orlando, Florida.

21. Darden, through GMRI, owns 100% of the stock of Rare International.

22. Defendant RARE Hospitality Management, Inc. ("Rare Management") is a corporation organized under the laws of the State of Delaware. Rare Management regularly conducts business in this judicial district.

23. Rare Management does business under the names Longhorn Steakhouse and The Capital Grille.

24. Rare Management's principal place of business is located at 1000 Darden Center Drive, Orlando, Florida.

25. Darden, through GMRI and Rare International, owns 100% of the stock of Rare Management.

26. Defendant Capital Grille Holdings, Inc. ("Capital Grille Holdings") is a corporation organized under the laws of the State of North Carolina. Upon information and belief, Capital Grille Holdings regularly conducts business in this judicial district.

27. Capital Grille Holdings does business under the name The Capital Grille.

28. Capital Grille Holdings' principal place of business is located at 1000 Darden Center Drive, Orlando, Florida.

29. Darden, through GMRI, Rare International and Rare Management, owns 100% of the stock of Capital Grille Holdings.

30. Defendant N and D Restaurants, Inc. ("N and D Restaurants") is a corporation organized under the laws of the State of Florida. N and D Restaurants regularly conducts business in this judicial district.

31. N and D Restaurants does business under the name Olive Garden.

32. N and D Restaurants' principal place of business is located at 1000 Darden Center Drive, Orlando, Florida.

33. Darden, through GMRI, owns 100% of the stock of N and D Restaurants.

34. Defendant Darden SW LLC ("Darden SW") is a limited liability company organized under the laws of the State of Florida. Darden SW regularly conducts business in this judicial district.

35. Darden SW does business under the name Olive Garden.

36. Darden SW's principal place of business is located at 1000 Darden Center Drive, Orlando, Florida.

37. Darden, through GMRI, owns 100% of the ownership interests in Darden SW.

38. Defendant Florida SE, Inc. ("Florida SE") is a corporation organized under the laws of the State of Florida. Florida SE regularly conducts business in this judicial district.

39. Florida SE does business under the name Olive Garden.

40. Florida SE's principal place of business is located at 1000 Darden Center Drive,

Orlando, Florida.

41.     Darden, through GMRI, owns 100% of the stock of Florida SE.

42.     GMRI, Rare International and Rare Management, Capital Grille Holdings, N and D Restaurants, Darden SW and Florida SE are collectively referred to herein as "the Operator Defendants."

## JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*.

44.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of the Plaintiffs herein occurred within this judicial district, and Defendants each regularly conduct business in and have engaged and continue to engage in the wrongful conduct alleged herein in -- and, thus, are subject to personal jurisdiction in -- this judicial district.

## FACTUAL ALLEGATIONS

45.     Three of the most basic protections afforded by the FLSA are the entitlement of employees: (i) to be paid for all hours worked, (ii) to be paid a minimum wage, and (iii) to be paid premium overtime compensation for all hours worked in excess of forty hours per week, unless such employees are shown to be exempt from such protections.

46.     In violation of these basic protections, Plaintiffs and the members of the Class were (i) not lawfully paid for all hours worked, including but not limited to all time above and beyond forty hours in each work week, (ii) not paid the applicable minimum wage, and (iii) not paid premium overtime compensation for all hours worked in excess of forty hours per week.

47.     Darden is an employer and/or a joint employer of Plaintiffs and the members of

the Class within the meaning of the FLSA.

48.     Darden operates and/or controls, directly and/or through sole ownership of its subsidiaries, the restaurant locations at which Plaintiffs and the members of the Class work and/or worked (collectively, "the Restaurants").

**A. Darden Centrally Controls the Restaurants**

49.     Darden is a Fortune 500 company which generated sales from restaurant operations in excess of $7.5 billion in 2011, and $7.1 billion in 2010.

50.     Darden, through its wholly-owned subsidiaries named above, owns and operates approximately 1,900 restaurants under the brand names The Capital Grille, Longhorn Steakhouse, Olive Garden and Red Lobster.

51.     Darden does not franchise its restaurants in the United States.

52.     Darden and its subsidiaries, including Rare Management, Rare International, GMRI, Florida SE, N and D Restaurants, Capital Grille Holdings and Darden SW occupy the same principal place of business: 1000 Darden Center Drive, Orlando, Florida.

53.     Each of the Defendants has at least one officer or director in common, and most of Defendants have multiple shared officers and/or directors, including: Rare Management (William White, Joseph Kern, and Colleen Hunter), Rare International (William White, Joseph Kern, and Colleen Hunter), GMRI (William White, Joseph Kern, and Colleen Hunter), Florida SE (William White, Joseph Kern, and Colleen Hunter), N and D Restaurants (William White, Joseph Kern, and Colleen Hunter),  Capital Grille Holdings (William White and Joseph Kern), and Darden (William White).

54.     The Restaurants are designed exclusively by Darden, including not only the Restaurants' layout and décor, but also the music played in the restaurant.  Upon information and

belief, the Restaurants rarely, if ever, deviate from Darden's décor and music selections.

55. Each of the Restaurants is operated under a particular brand name, *e.g.* Longhorn Steakhouse, and offers a menu which is curated exclusively by Darden. Upon information and belief, none of the restaurants deviate from Darden's menus.

56. Darden, through its wholly-owned subsidiary Darden Concepts, Inc., controls the content of the websites for each of its brands, including The Capital Grille, Longhorn Steakhouse, Olive Garden, and Red Lobster.

57. Darden uses job application forms for each of the Restaurants, which, other than the logos for its restaurant brands, are identical in substance and form.

58. Darden implements centralized training for managers in its each of the Restaurants. Managers of The Capital Grille are trained in the same manner, and using the same materials, as managers of Longhorn Steakhouse, Olive Garden, and Red Lobster.

59. Darden maintains a Code of Business Conduct and Ethics which, Darden asserts, reflects its core values. Darden claims its Code of Business Conduct and Ethics applies to all of the Restaurants, including all of its Capital Grille, Longhorn Steakhouse, Olive Garden, and Red Lobster locations.

60. Darden employs a single toll-free employee hotline number for all of the Restaurants. Employees of The Capital Grille who need to contact Darden call the same number as employees of Longhorn Steakhouse, Olive Garden, and Red Lobster.

61. All of the employees who work at the Restaurants can keep track of their taxes, schedules, and paychecks, and can communicate with their managers and directors through a uniform website called the Darden Information Super Highway or "DISH".

### B. Defendants' Uniform and Unlawful Wage Practices

62.     Darden (i) creates uniform wage policies and practices for use at the Restaurants, (ii) controls the Restaurants by imposing its uniform wage policies and practices at the Restaurants, and (iii) maintains a centralized human resources function which oversees the implementation of Darden's wage policies and practices at the Restaurants.

63.     The Operator Defendants each operate Restaurant locations which, upon information and belief, implement Darden's uniform policies and practices. Darden requires and monitors compliance with its policies.

#### 1.     Off-the-Clock Work

64.     Darden employs a uniform electronic timekeeping system for tracking and reporting employee hours worked at the Restaurants. The timekeeping system is called Darden Application for Service & Hospitality or DASH. The DASH system allows employees to punch in and out for their shifts, as well as place customers' food and beverage orders.

65.     The Operator Defendants utilize DASH at all of the Restaurants.

66.     Hours worked are reported from the Restaurants through DASH to Darden's centralized human resources function.

67.     Darden monitors the hours worked at the Restaurants.

68.     The hours worked by Plaintiffs and the members of the Class were uniformly manipulated by Darden and the Operator Defendants to avoid reporting time worked. Plaintiffs and the members of the Class were routinely not paid for time worked, including but not limited to overtime.

69.     Pursuant to Darden's uniform policies, which were implemented by the Operator Defendants, Plaintiffs and the members of the Class were required to work for the benefit of

Darden and the Operator Defendants when they were not contemporaneously logged into DASH as present and working.

70. Pursuant to Darden's uniform policies, which were implemented by the Operator Defendants, Plaintiffs and the members of the Class were required to arrive at work on time for scheduled work shifts.

71. Pursuant to Darden's uniform policies, which were implemented by the Operator Defendants, Plaintiffs and the members of the Class were required to wait for the first customer to arrive before using DASH to begin logging hours worked.

72. Pursuant to Darden's uniform policies, which were implemented by the Operator Defendants, Plaintiffs and the members of the Class were required to log out of DASH at the end of their assigned shifts, before they completed their assigned tasks for such shifts. After logging out of DASH, Plaintiffs and the members of the Class continued to work until such assigned tasks were completed.

73. As a result of the above uniform timekeeping practices, the timekeeping records of Defendants do not reflect the total time worked by Plaintiffs and the members of the Class. The total time worked by Plaintiffs and the members of the Class is substantially understated. Furthermore, the timekeeping records of Defendants do not reflect the fact that Plaintiffs and the members of the Class worked in excess of forty hours per week.

  **2. Tip Credit Violations**

74. Upon information and belief, rather than pay its tipped employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants imposed a tip credit upon Plaintiffs and the members of the Class. Defendants therefore paid Plaintiffs and the members of the Class at a rate less than the

applicable minimum wage.

75.     As a result of Defendants' imposition of a tip credit, Plaintiff and the members of the Class members were forced to perform minimum wage work without pay (in the case of hours worked off-the-clock) or at an hourly rate that was less than minimum wage.

76.     In addition to their tipped work, Plaintiffs and the members of the Class were required by Defendants to perform non-tipped work including but not limited to (i) preparatory and workplace maintenance tasks such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice and condiments; cleaning booths, booth ledges, chair seats, restaurant artifacts and décor, lights, blinds, windows; and (ii) closing out customers' checks and performing pre-closing cleaning tasks, including vacuuming and/or sweeping the servers' assigned area and checking dishes (collectively "Side Work").

77.     The Side Work which Plaintiffs and the members of the Class were required to perform exceeded twenty percent (20%) of their time at work.

78.     As a result, Plaintiffs and the members of the Class are entitled to at least the applicable minimum wage for all such time worked, without applying a tip credit.  Furthermore, Plaintiffs and the members of the Class who worked in excess of forty hours per week are entitled to receive overtime compensation, without applying a tip credit.

79.     The United States Department of Labor's Fact Sheet #15 provides that "the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13)."

80.     According to the regulations promulgated by the Department of Labor, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."  29 C.F.R. § 531.52.

81. Although at this stage Plaintiffs are unable to state the exact amount owed to the Class, Plaintiffs believe that such information will become available during the course of discovery. However, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.

### C. Defendants' Wage Violations and Other Lawsuits

82. Defendants' uniform wage policies and practices concerning off-the-clock work and tip credit violations have resulted in multiple findings of FLSA violations, as well as lawsuits filed by employees of Defendants in multiple jurisdictions.

83. Following a federal investigation in 2011, the United States Department of Labor found that Darden had violated several provisions of the FLSA by requiring Olive Garden servers to clock in only once their first customers were seated instead of when their relevant shift began. The Department of Labor found this practice to have resulted in Olive Garden servers being paid below the federal minimum wage, violating the FLSA's minimum wage and record-keeping provisions.

84. Also in 2011, a separate investigation by the United States Department of Labor found that Darden had violated several provisions of the FLSA by requiring Red Lobster servers to clock in only once their first customers were seated instead of when they started their shifts. The Department of Labor found this practice to have resulted in Red Lobster servers being paid below the federal minimum wage, violating the FLSA's minimum wage and record-keeping provisions.

85. In *Chhab v. Darden Restaurants, Inc*., 11 Civ. 8345, filed in the United States District Court for the Southern District of New York, six plaintiffs alleged that Darden, GMRI,

Capital Grille Holdings and Rare Management did not permit them to punch in until the first customer arrived. The plaintiffs further alleged that those Defendants imposed a tip credit which reduced the plaintiffs' hourly rate, and that they required the plaintiffs to perform Side Work in excess of 20% of the time worked.

86. In *Velez v. Longhorn Steaks, Inc.*, 12 Civ. 04857, filed in the United States District Court for the Northern District of Illinois, the plaintiff alleged that she was not permitted to punch in until the first customer arrived, and that she was required to continue working after clocking out. The plaintiff further alleged that Darden and Longhorn Steaks, Inc. imposed a tip credit which reduced the plaintiff's hourly rate, and that Darden required the plaintiff to perform Side Work in excess of 20% of the time worked.

87. In *Rosas v. Capital Grille Holdings, Inc.*, 12 Civ. 00660, filed in the United States District Court for the Northern District of Illinois, thirteen plaintiffs alleged that Darden, GMRI and Capital Grille Holdings required them to report to work and begin working before they were permitted to clock in, and required them to continue working after clocking out.

88. Defendants' uniform wage policies and practices have spawned an organized advocacy effort, Dignity at Darden, which seeks to drastically improve wages and working conditions in Defendants' restaurants. Complaints similar to those made herein concerning off-the-clock work and violations of tip credit rules are described in materials prepared by Dignity at Darden. Dignity at Darden's website may be found at http://www.dignityatdarden.org/.

**COLLECTIVE ACTION ALLEGATIONS**

89. Plaintiffs bring this action on behalf of the Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

90. The claims under the Fair Labor Standards Act may be pursued by those who opt-

in to this case pursuant to 29 U.S.C. §216(b).

91.The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are at least thousands of individuals in of the Class.

92.The claims of Plaintiffs are typical of the claims of the Class. Plaintiffs and the members of the Class work or have worked for Defendants at the Restaurants and were subject to the same operational, compensation and timekeeping policies and practices, including not being paid for all hours worked.

93.Common questions of law and fact exist as to the Class which predominate over any questions only affecting them individually and include, but are not limited to, the following:

- whether Plaintiffs and the members of the Class were expected and/or required to work hours without compensation;
- whether Defendants failed to pay Plaintiffs and the members of the Class the applicable minimum wage for all hours worked;
- whether Defendants failed to pay Plaintiffs and the members of the Class all overtime compensation due to them for all hours worked in excess of forty hours per week;
- whether Defendants violated applicable tip credit rules by requiring Plaintiffs and the members of the Class to spend over 20% of their work shifts performing non-tipped Side Work;
- the correct statutes of limitations for Plaintiffs' claims and the claims of the members of the Class;

- whether Plaintiffs and the members of the Class are entitled to damages, including but not limited to liquidated damages, and the measure of damages; and

- whether Defendants are liable for attorneys' fees and costs.

94. Plaintiffs will fairly and adequately protect the interests of the Class as their interests are aligned with those of the members of the Class. Plaintiffs have no interests adverse to the Class, and Plaintiffs have retained competent counsel who are experienced in class action litigation.

95. The collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Class are relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

96. Plaintiffs and the Class have suffered and will continue to suffer irreparable damage from the unlawful policies and practices implemented by Defendants.

**FIRST CLAIM FOR RELIEF**

**FAIR LABOR STANDARDS ACT VIOLATIONS – UNPAID WAGES**
**(On Behalf of the Class)**

97. Plaintiffs, on behalf of themselves and the Class, repeat and reallege paragraphs 1 through 73 and 82 - 96 above as if they were fully set forth herein.

98. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

99. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs

and each of the Class Members within the meaning of the FLSA.

100. At all relevant times, Defendants had a uniform policy and practice of willfully refusing to pay tipped employees for all hours worked.

101. As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the members of the Class, the applicable federal minimum wage for all hours worked, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 291, et seq.

102. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

103. Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

### FAIR LABOR STANDARDS ACT VIOLATIONS - OVERTIME
**(On Behalf of the Class)**

104. Plaintiffs, on behalf of themselves and the Class, repeat and reallege paragraphs 1 through 73 and 82 - 96 above as if they were fully set forth herein.

105. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

106. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Class Members within the meaning of the FLSA.

107. At all relevant times, Defendants had a uniform policy and practice of willfully refusing to pay tipped employees appropriate overtime compensation for all hours worked in

excess of forty hours per work week by Plaintiffs and each of the Class Members.

108.   As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the members of the Class, the applicable federal minimum wage for all hours worked at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 291, et seq.

109.   Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

110.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants, compensation for unpaid overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## THIRD CLAIM FOR RELIEF

### FAIR LABOR STANDARDS ACT VIOLATIONS – MINIMUM WAGE
**(On Behalf of the Class)**

111.   Plaintiffs, on behalf of themselves and the Class, repeat and reallege paragraphs 1 through 63 and 74 - 96 above as if they were fully set forth herein.

112.   Pursuant to Defendants' uniform compensation policies, Defendants chose to pay their tipped employees the tip-credit wage rather than the applicable minimum wage.

113.   Because of Defendants' failure to pay tipped employees for all hours worked, tipped employees, including Plaintiffs and the members of the Class, did not receive wages equal to or in excess of the applicable minimum wage for all hours worked.

114.   As alleged herein, pursuant to Defendants' uniform policies, tipped employees including Plaintiffs and the members of the Class were required to perform non-tipped Side

Work while not clocked into DASH and as a result received no compensation for such time worked.

115. Furthermore, the Side Work which Plaintiffs and the members of the Class were required to perform before, during and after their shifts exceeded twenty percent (20%) of their time at work.

116. Defendants are not and were not entitled to take the tip credit for all such time. Defendants thus failed to pay Plaintiffs and the members of the Class the proper applicable minimum wages rates for this time, and the full minimum wage for such time is owed.

117. Plaintiffs and the members of the Class are therefore entitled to compensation for the unpaid minimum wages at an hourly rate to be proven at trial (either the applicable state minimum wage or the federal minimum wage, whichever is higher), plus applicable overtime, and an additional amount as liquidated damages, together with interest, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Class, request that this Court grant the following relief against Defendants:

A. Designation of this action as a collective action on behalf of the Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents pursuant to 29 U.S.C. §216(b);

B. On the first claim for relief, an award of compensation for unpaid wages to Plaintiffs and the members of the Class;

C. On the second claim for relief, an award of unpaid compensation for overtime to Plaintiffs and the members of the Class;

D. On the third claim for relief, an award of compensation for unpaid minimum wages at the applicable minimum wage rate (either the applicable state minimum wage or the federal minimum wage, whichever is higher) to Plaintiffs and members of the Class;

E. On the first, second and third claims for relief, an award of liquidated damages to Plaintiffs and the members of the Class;

F. On the first, second and third claims for relief, an award of prejudgment and post-judgment interest to Plaintiffs and the members of the Class;

G. On the first, second and third claims for relief, an award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Class; and

H. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated:   September 6, 2012

Respectfully submitted,

s/ David H. Lichter
David H. Lichter (FBN: 0359122)
DLichter@HLGLawyers.com
HIGER LICHTER & GIVNER
18305 Biscayne Blvd., Suite 302
Aventura, FL 33160
Tel: (305) 356-7555
Fax: (305) 933-0998
*Attorneys for Plaintiffs*

*Mathis, et al v. Darden Restaurants, Inc., et al*

Of Counsel:
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Matthew Wojtkowiak
MWojtkowiak@triefandolk.com
TRIEF & OLK
150 E 58th Street, 34th Floor
Tel.: (212) 486-6060
Fax.: (212) 317-2946
*Co-Counsel for Plaintiffs*

Of Counsel:
Peter S. Pearlman, Esq.
psp@njlawfirm.com
Alex Pisarevsky
AP@njlawfirm.com
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 Plaza West One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Tel.: (201) 845-9600
Fax.: (201) 845-9423
*Co-Counsel for Plaintiffs*