## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-61742-CIV-ROSENBAUM/SELTZER

NICOLE ALEQUIN, *et al.*,

      Plaintiffs,

vs.

DARDEN RESTAURANTS, INC., *et al.*,

      Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO INVALIDATE

This matter is before the Court upon Plaintiffs' Motion for Conditional Certification and Incorporated Memorandum of Law [D.E. 168], and Plaintiffs' Motion to Invalidate Under FLSA Defendants' Checks-For-Waiver Program Based on Defendants' Unlawful Attempt to Compromise the Claims of Plaintiffs or Potential Plaintiffs; For Clarification of Court's March 4, 2013, Order and/or for Order for Defendants to Show Cause Whether They Have Violated the Court's March 4, 2013, Order Regarding Questioning of Certain Plaintiffs and for Other and Further Relief [D.E. 169]. The Court has considered the Motions, all supporting and opposing filings, and the record in the case. For the reasons set forth below, the Court now grants in part and denies in part Plaintiffs' Motion for Conditional Certification [D.E. 168] and grants in part and denies in part Plaintiffs' Motion to Invalidate [D.E. 169].

### BACKGROUND

On September 6, 2012, Plaintiffs Amanda Mathis and James Hamilton filed this lawsuit against their employers, restaurant chains owned by Darden, Inc., under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), on behalf of themselves and all persons similarly situated. D.E. 1. They allege unpaid wages, overtime violations, and minimum-wage violations. *Id.* at 15-18. On November 15, 2012, Plaintiffs filed an Amended Complaint that added over fifty Plaintiffs. D.E. 34.

The Court's December 6, 2012, Scheduling Order directed the parties to conduct an initial period of discovery on whether to issue notice of the action to similarly situated employees. D.E. 47. That discovery period ended on April 5, 2013, *id.*, and on April 19, 2013, Plaintiffs moved for conditional certification of a collective action under the FLSA. D.E. 168. By that date, over 250 current and former employees of Darden restaurants had filed with the Court notices of consent to join the action should the Court certify a collective action. *See* D.E. 168 at 11.

In the meantime, since October 2012, regional directors of operations of Darden restaurants investigated back pay owed to their employees and provided checks to certain employees to compensate them for these back wages owed. D.E. 181 at 1-2. Upon receipt of the checks, employees were made to sign "Employee Acknowledgment" forms that stated, among other things, that the employee has "been paid for all hours worked." D.E. 169-2 at 3. Employees were not provided any details as to how the amount of back pay in these checks was calculated. D.E. 169 at 3-4. Plaintiffs separately moved to invalidate Defendants' practice of providing these checks to employees who sign the Employee Acknowledgment form. D.E. 169. Because of the interrelated issues in Plaintiffs' two Motions, the Court addresses both of them in this Order.

## DISCUSSION

### I. Plaintiffs' Motion for Conditional Certification

The FLSA provides "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" a cause of action against their employers for alleged violations of the Act. 29 U.S.C. § 216(b). The purposes of § 216(b) collective actions include "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264-65 (11th Cir. 2008) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, a class action brought under the FLSA can include only those plaintiffs who affirmatively opt into the action by filing their consent in writing in the court in which the action is brought. 29 U.S.C. § 216(b); *see also De Leon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218-19 (11th Cir. 2007). As a result, the mere decision to certify a § 216(b) action does not, on its own, create a class of plaintiffs as in a Rule 23 class action. *Morgan*, 551 F.3d at 1259 (quoting *Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1249 (11th Cir.2003)). It follows that "the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees" and create the class. *Morgan*, 551 F.3d at 1259 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir.2001)).

In order to facilitate the early certification of a class, where proper, the Eleventh Circuit has

sanctioned a two-stage procedure to effectively manage § 216(b) actions in the pretrial phase. *Morgan*, 551 F.3d at 1260. The Eleventh Circuit Court of Appeals recommends but does not require that district courts follow this two-tiered approach. *See Hipp*, 252 F.3d at 1219. The first stage occurs during discovery and is called the "notice stage" or "conditional certification." If the court approves conditional certification in this first stage, putative class members receive notice of the action and the opportunity to opt in. Because of the conditional nature of the putative class, the standard at this first stage is described as "not particularly stringent," *Hipp*, 252 F.3d at 1214, "fairly lenient," *id.* at 1218, and "flexib[le]," *id.* at 1219. *See Morgan*, 551 F.3d at 1260-61.

The second stage occurs if the defendant employer moves for decertification. *Morgan*, 551 F.3d at 1261. This stage usually happens "just before the end of discovery, or at its close," when the court has a more extensive and detailed factual record. *Id.* Because the court has a more complete record and can make a more informed decision, this stage is "less lenient, and the plaintiff bears a heavier burden." *Id.* (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)).

### (A) Whether the Conditional Certification Analysis is Appropriate at this Time

Before the Court now is Plaintiffs' motion for stage-one conditional certification. As a threshold matter, Defendants argue that due to the "four months of extensive discovery" that have already taken place, the Court should skip the first stage and move directly to the more stringent second stage of class certification. D.E. 186 at 27. Defendants cite as support cases where, due to far-reaching discovery, other district courts in the Eleventh Circuit have found it appropriate to skip the initial conditional-certification stage and move directly to the factual determinations of the second stage. D.E. 186 at 26-27 (citing *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d

-4-

1272, 1276 (M.D. Ala. 2004); *Vaughn v. Oak Street Mortgage, LLC*, 2006 U.S. Dist. LEXIS 34830, at *4 (M.D. Fla. May 30, 2006); and *Lemming v. Sec. Forces, Inc.*, 2010 WL 5058532 (M.D. Fla. Dec. 6, 2010)). Defendants also cite to one case of this District, *Mancuso v. Florida Metropolitan University, Inc.*, 2010 WL 3702511 (S.D. Fla. Sept. 16, 2010), that similarly dispensed with the first stage.

Controlling cases of the Eleventh Circuit Court of Appeals, however, make clear that the second-stage analysis usually occurs "after discovery is largely complete and the matter is ready for trial," *Anderson*, 488 F.3d at 953 (quoting *Hipp*, 252 F.3d at 1218), or "just before the end of discovery, or at its close," *Morgan*, 551 F.3d at 1261.

The unique factual circumstances of the cases to which Defendants cite are not applicable in the present case. In *Mancuso*, for example, the court moved directly to the second stage when analyzing the plaintiffs' second motion for conditional certification of a nationwide class only because the court had already conducted the first-stage analysis with respect to the plaintiffs' initial motion to conditionally certify a more limited class. *Mancuso*, 2010 WL 3702511, at *9 n. 5. Similarly, in *Vaughn*, the court skipped the first stage of class certification only because a similar class had already been conditionally certified, then decertified in part, in a "virtually identical" companion case. *Vaughn*, 2006 U.S. Dist. LEXIS 34830, at *2-3.

Moreover, this Court's Scheduling Order makes clear that the discovery conducted through April 5, 2013, was to concern only "facts relating to whether to issue notice to similarly situated employees." D.E. 47 at 1. Defendants' own Motion for Protective Order shows that it understood that the "proper scope of the [initial discovery period was] limited to issues bearing on certification." D.E. 101 at 1. Discovery on the merits is not scheduled to begin until July 15, 2013. D.E. 47 at 2.

-5-

Thus, unlike in the cases cited by Defendants, the litigation here is far from the point at which discovery is "largely complete and the matter is ready for trial." *Anderson*, 488 F.3d at 953 (quoting *Hipp*, 252 F.3d at 1218). In short, "substantive second-stage analysis is [generally] not appropriate until all discovery—including merits discovery—is substantially complete." *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 827 (D. Md. 2012) (quoting *Helmert v. Butterball, LLC*, 2009 WL 5066759, at *6 (E.D. Ark. Dec. 15, 2009)). As a result, this Court finds it appropriate to conduct the first stage of conditional-certification analysis at this time and will not proceed directly to the second-stage analysis as Defendants request.

## (B) Conditional Certification Analysis

Having established that first-stage analysis is proper, the Court now considers whether conditional certification is warranted. Courts of this District generally look at two major factors to determine whether conditional certification is proper: (1) whether other employees of the defendant employer desire to opt-in; and (2) whether these other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1282-83 (S.D. Fla. 2012) (quoting *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir.1991)).

### i. The Number of Other Employees Who Desire to Opt In

Plaintiffs' burden to show the existence of other potential opt-ins is not onerous. "[T]he existence of just one other co-worker who desires to join in is sufficient to 'rais[e] the Plaintiff's contention beyond one of pure speculation.'" *Bennett*, 880 F. Supp. 2d at 1283 (quoting *Guerra v.*

-6-

*Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512, at \*4 (S.D.Fla. May 17, 2006)). Indeed, courts in this District have conditionally certified classes with as few as twelve affidavits from potential plaintiffs. *Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1356 (S.D. Fla. 2011); *see also Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (holding affidavits of seven plaintiffs that indicated that others desired to opt in sufficient for conditional certification). On the other hand, where the only evidence in support of the existence of other employees who wish to opt in is an unsworn statement from the plaintiff's counsel that "[u]ndoubtedly, there exist similarly situated individuals who would opt-in to this action if given notification," conditional certification is not proper. *Williams v. Imperial Hospitality Group, Inc.*, 2010 WL 3943590, at \*2 (S.D. Fla. 2010).

Here, approximately 250 employees have filed notices of their consent to join the collective action if the matter is certified. D.E. 168 at 10-11. This easily satisfies this District's standards to show the existence of other potential opt-in plaintiffs. Contrary to Defendants' contention in their response, nothing in our precedent requires Plaintiffs to show that the number of named Plaintiffs and Opt-Ins must exceed a certain percentage of the number of members of the putative class for conditional certification to be proper.[1] D.E. 28 at 27-28.

### ii. Whether the Other Employees Are Similarly Situated

---

[1] The Court nevertheless recognizes Defendants' argument that the initial scope of Plaintiffs' desired class, which originally covered all tipped employees of Defendant employers, was overly broad, and included employment types such as food runners and service assistants for which Plaintiffs provided no evidence. D.E. 186 at 28. However, the Court construes Plaintiffs' subsequent limitation of the class to only servers and bartenders [D.E. 197 at 27]—for which Plaintiff has provided ample evidence—as an amendment to the original motion, thereby rendering moot these arguments by Defendants.

The FLSA provides that actions can be brought under the statute "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," 29 U.S.C. § 216(b), but the FLSA does not define how "similarly situated" employees need to be to bring a collective action under § 216(b), nor has the Eleventh Circuit adopted a precise definition of the phrase. *Morgan*, 551 F.3d at 1259. Nevertheless, case law suggests that district courts look to whether the other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions," *Id.* at 1259 (quoting *Dybach*, 942 F.2d at 1567-68), although those two factors by themselves are not dispositive, *see Anderson*, 488 F.3d at 953 (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). In evaluating these considerations, the Eleventh Circuit has emphasized that courts must analyze whether employees are *similarly situated* and "not whether their positions are identical." *Morgan*, 551 F.3d at 1260 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

To conduct this analysis, courts of this District commonly consider five factors at the conditional-certification stage: "1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographic location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; [and] 5) the extent to which the actions which constitute the violations claimed by Plaintiffs are similar." *Smith v. Tradesmen Intern, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (citing *Stone v. First Union Corp.*, 203 F.R.D. 532 (S.D. Fla. 2001)); *see also Carrera v. UPS Supply Chain Solutions, Inc.*, 2011 WL 1303151, at *4 (S.D. Fla. March 31, 2011) (applying the same five factors). No one factor is dispositive, *Reyes*, 2005 WL 4891058, at *7, and the factors taken as a whole are

not necessarily determinative of status as similarly situated employees, *Meggs v. Condotte Am., Inc.*, 2012 WL 3562031, at *3 n. 5 (S.D. Fla. 2012). Nevertheless, the factors are "insightful and helpful," *Meggs*, 2012 WL 3562031, at *3 n. 5, and the Court applies them here.

### (a) Whether Plaintiffs all Held the Same Job Title

As noted above, Plaintiffs have amended their original motion and now seek conditional certification of a class consisting only of servers and bartenders. D.E. 197 at 27. The Middle District of Florida recently conditionally certified a class that included both servers and bartenders. *Stuven v. Texas de Brazil (Tampa) Corp.*, 2013 WL 610651, at *4 (M.D. Fla. Feb. 19, 2013) (citing *Haschak v. Fox & Hound Rest. Group*, 2012 WL 5509617, at *6 (N.D.Ill. Nov.14, 2012), and *Shajan v. Barolo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010), both of which conditionally certified a class of servers and bartenders). The court there noted that "[a]t this stage of the litigation, what the employee serves—food or beverages—is a minor distinction." *Stuven*, 2013 WL 610651, at *4.

In this case, Defendants suggest a potential intra-class conflict in the class proposed by Plaintiffs. D.E. 186 at 29. Specifically, Defendants note that servers, when working as "shift captains" or "closers," could exhibit favoritism in assigning and approving sidework, thereby impacting the type, amount, and duration of sidework performed by other putative class members. *Id.* Defendants also posit that intra-class conflicts could arise because the type, amount, and duration of sidework could also be affected by whether co-workers properly completed their own sidework tasks. *Id.*

Defendants do not specify which portion of Plaintiffs' evidence supports these propositions. Instead, Defendants cite *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002), in

which the court found intra-class conflict in a putative class that included both superiors and the employees whom they supervised, and *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1285 (S.D. Fla. 2012), in which intra-class conflict was suggested when some, but not all, members of the desired class had been reimbursed for underpaid wages.

Neither of these two situations applies in the present case. The record indicates, for example, that an individual server would work as a closer on some evenings and as a "noncloser" on others. D.E. 168-123 at 18; D.E. 168-179 at 30. Thus, "shift captain" and "closer" designations were more akin to temporary duties than permanent job positions, and Defendants have not shown a continuous relationship of superior and employee as was the case in *White v. Osmose, Inc.* Likewise, the court in *Bennett* was at the stage of determining the manageability of the class and found that some, but not all, employees receiving reimbursement raised individualized issues that cut against class manageability. *Bennett*, 880 F. Supp. 2d at 1284. But here, the Court is not at the stage of making determinations about class manageability—a matter reserved for the decertification stage.

### (b) Whether Plaintiffs Worked in the Same Geographic Location

Although a similar geographic location weighs in favor of conditional certification, this factor by itself is "not conclusive." *Hipp*, 252 F.3d at 1219. The Eleventh Circuit has previously upheld conditional certification of nationwide classes or classes whose members span several states. *See Morgan*, 551 F.3d at 1241 (upholding nationwide class of chain store managers); *see also Hipp*, 252 F.3d at 1219; *Grayson*, 79 F.3d at 1091. Plaintiffs here move for the conditional certification of a nationwide class of servers and bartenders, while Defendants suggest that Plaintiffs should "limit the putative class to . . . [a smaller] geographical location." D.E. 186 at 30. As courts of other circuits

have noted, "[T]here is no indication that Congress intended section 216 to only allow small collective actions involving unpaid overtime to proceed," *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008), and limiting FLSA class actions in this way "would lead to the absurd result that employers could escape FLSA liability by making sure to underpay vast numbers (rather than smaller numbers) of their employees," *Donohue v. Francis Services, Inc.*, 2004 WL 1406080, at *1 (E.D. La. June 22, 2004). Accordingly, the broad geographic scope of Plaintiffs' putative class alone does not preclude conditional certification.

### (c) Whether the Alleged Violations Occurred During the Same Period

Plaintiffs have limited the temporal scope of their action to the three years prior to the filing of the Complaint, the FLSA statute of limitations. D.E. 197 at 28-29. Courts of this District have previously certified FLSA collective actions covering similar periods. *See Bennett*, 880 F. Supp. 2d at 1276 (conditionally certifying class for two years of overtime violations); *Peralta v. Greco Intern. Corp.*, 2011 WL 5178274, at *4 (S.D. Fla. Oct. 31, 2011) (approving collective action for work performed over a three-year period). Thus, this third factor does not undermine Plaintiffs' motion for conditional certification.

### (d) Whether Plaintiffs were Subjected to the Same Policies and Practices

Defendants contend that Plaintiffs fail to meet this fourth factor because Defendants implement only lawful policies and practices uniformly across their restaurant brands, whereas the "unlawful *de facto* policies and practices" that Plaintiffs allege are not uniform and are unique to each individual restaurant or its manager. D.E. 186 at 30-35. However, as the Eleventh Circuit noted

in an opt-in collective action case concerning allegations of age discrimination under the Age Discrimination in Employment Act,[2] 29 U.S.C. §§ 629-634, "[a] unified policy, plan, or scheme *of discrimination* may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1095) (emphasis added). While a showing of a general corporate policy in violation of the law might be required to prove the commonality required of a Rule 23 class action, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2546 (2011), collective actions under the FLSA carry no such requirement. Plaintiffs at the conditional-certification stage are therefore not required to demonstrate a unified, explicit scheme of FLSA violations, but rather must show only that they are similarly situated with respect to general workplace policies and practices.

Here, Plaintiffs have submitted evidence of Department of Labor investigations that indicate that multiple FLSA violations across Darden restaurants are not a "fluke" but instead may be "an indication that Darden Restaurants, Inc. is not properly addressing these issues companywide . . . and [is] not implementing an enforcement tool that will fully place the corporation as a wh[o]le in compliance with the Fair Labor Standards Act." D.E. 168-111 at 13. Plaintiffs also submitted evidence that Darden centrally controls employment policies and guidelines across its restaurant brands and that all employees must log into Darden's centralized computer networks to clock in or out, request time off, or access payroll information. D.E. 168 at 12-14. Indeed, Plaintiffs' allegations rely on the alleged misuse of this centralized computer network, asserting that Defendants applied

---

[2] The Age Discrimination in Employment Act of 1967 ("ADEA") incorporates by reference the "powers, remedies, and procedures" provided in FLSA § 216(b). 29 U.S.C. § 626(b); *see also Grayson*, 79 F.3d at 1107 (noting that "ADEA class actions . . . as a general matter, track the enforcement procedures of the FLSA"). As a result, case law construing the collective action provisions of the ADEA is instructive in FLSA collective actions.

the wrong paycode or Defendants' managers altered electronic time records to reduce the number of hours worked reflected on the computer system. D.E. 168 at 17, 21. Though Plaintiffs have not shown that an official policy or practice at Darden is unlawful, they do submit evidence of systemic issues across Darden restaurants that could result in FLSA violations. For these reasons, Plaintiffs have met their burden at this stage to demonstrate that they are similarly situated with respect to corporate policies and practices.

(e) Whether the Actions which Constitute the Alleged Violations are Similar

Plaintiffs allege two main types of violations: 1) a portion of the work of servers and bartenders was underpaid because an excessive proportion of their hours at the tip-credit wage consisted of non-tipped sidework; and 2) a portion of the work of servers and bartenders was entirely unpaid, either because they were forced to work off the clock or because management later reduced their electronically recorded hours. D.E. 168 at 1. Defendants assert that the specific allegations vary from Plaintiff to Plaintiff, rendering their claims dissimilar, and thus inappropriate, for collective action. D.E. 186 at 35-37.

But the case from this District that Defendants cite as support, *Echevarria v. Las Vegas Beach, Inc.*, 2010 WL 2179747 (S.D. Fla. June 1, 2010), is inapposite. There, the plaintiffs produced no evidence that other employees desired to opt in should the collective action be certified, and "common issues were nonexistent" because the plaintiff asked to certify a class of employees at various restaurants owned by several different corporations each with different supervisors and "some seven different pay practices." *Echevarria*, 2010 WL 2179747, at *2. Plaintiffs in the present case, however, move to conditionally certify a class of employees of a single restaurant corporation

with unified pay policies and practices—and they allege a more limited number of violations, all under the FLSA.

As previously noted, "plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Hipp*, 252 F.3d at 1217 (quoting *Grayson*, 79 F.3d at 1096). That they have done. "If, as Plaintiffs have alleged and shown, they are all harmed by the same company pay policies, then it is of no consequence whether their job duties are similar, what kind of work they performed, why they worked off the clock, and the like. What matters is that they did work off the clock, that [Defendants] required or permitted them to do so, and that they were not paid statutory overtime that was otherwise due. Plaintiffs have satisfied their modest burden of showing these elements, notwithstanding the missing details on which [Defendants] would seize." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1239 (S.D. Ala. 2008).

Accordingly, based on the totality of the circumstances, Plaintiffs have met their low burden to show the existence of other similarly situated employees who would join a collective action. After the close of discovery, Defendants may move for decertification and ask this Court to conduct stage-two certification analysis if they so choose.[3]

(C) Plaintiffs' Notice and Consent Form

---

[3] Additionally, this Court noted in its Scheduling Order that "any claim that would otherwise expire during the class-certification period will be tolled during that period." D.E. 47 at 1. The statute of limitations will be tolled such that claims originating up to three years prior to the filing of the Complaint will not be barred. The Court therefore does not need to rule on the issue of equitable tolling discussed by both parties in their filings. See D.E. 168 at 37-40; D.E. 186 at 48-50; D.E. 197 at 46-48.

Finally, the parties disagree as to the appropriateness of the notice-and-consent form proposed by Plaintiffs. D.E. 168-1. The Court does not find the notice "incomplete and organized in a way that is confusing and potentially misleading," as Defendants assert. *See* D.E. 186 at 45. The notice takes substantially the same form as notices that courts of this District have approved previously, and it is significantly longer and more inclusive than those notices. *See Bennett*, 880 F. Supp. 2d at 1285; *Bell*, 223 F.R.D. at 683. Nor does the Court find fault in the discussion of attorneys' fees in Plaintiffs' notice. *See Garrison v. Chuck, Carol & Co., Inc.*, 2007 WL 1106128, at *5 (M.D. Fla. April 11, 2007) (finding adequate notification that potential opt-ins "are not responsible for any attorneys' fees or costs, and that any attorneys' fees and costs will be paid out of a judgment or settlement, if any.").

Nevertheless, Plaintiffs' notice-and-consent form, D.E. 168-1, shall be amended in the following ways:

In accordance with the refined scope of Plaintiffs' class, Plaintiffs shall replace all mention of "tipped employees" or "tipped employees (such as servers and bartenders)," with the term "servers and bartenders." In addition, although the Court accepts Plaintiffs' amendments to the original notice that clarify that employees who "do nothing" still retain their legal rights to bring a lawsuit, D.E. 197 at 42, Plaintiffs, in accordance with the court-approved notice in *Bennett*, 880 F. Supp. 2d at 1285, shall notify employees that if they ask to be included, they "may be required to participate in discovery and a trial." *See* D.E. 186 at 46.

Plaintiffs' notice invites those employed during the period from September 6, 2009, to the present to join the collective action. D.E. 168-1 at 3. Defendants assert that, considering the FLSA's three-year statute of limitations, the proper time period should instead run from three years prior to

the date of notice up to the date of notice. D.E. 186 at 46. However, with Defendants' agreement, this Court tolled the statute of limitations during the class-certification period, so claims originating on or after the date three years prior to the date of filing of the Complaint, *i.e.* September 6, 2009, shall not be barred. D.E. 47 at 1. Therefore, the Court shall not amend the time period as Defendants propose. Yet Plaintiffs' proposed time period is also overly broad. By tolling the statute of limitations, this Court allowed older claims that would otherwise have been barred to join the action. But it did not invite claims that arose entirely after the filing of the Complaint to join the action.

Indeed, all of the cases that Plaintiffs cite in their Reply limit FLSA plaintiffs to raising claims originating in the three years up to, but not past, the filing of the complaint. *See, e.g.*, *Carmody v. Florida Ctr. For Recovery, Inc.*, 2006 WL 3666964, at *4 (S.D. Fla. Nov. 8, 2006) (authorizing plaintiffs to give notice to employees employed during the "three year time period" prior to the filing of the lawsuit); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) (granting plaintiffs' motion for conditional certification and notice "with respect to the class of all hourly wage employees who have worked at Defendant's . . . restaurant during the three (3) years *preceding the filing of this lawsuit*." (emphasis added)); *Longcrier*, 595 F. Supp. 2d at 1244 (granting conditional certification and notice to those "employed at any time between January 9, 2005 and *the filing of the Complaint* on January 9, 2008." (emphasis added)). Accordingly, Plaintiffs' notice shall limit claims to those that arose between September 6, 2009, and September 6, 2012.

Defendants also ask the Court to limit the opt-in period to forty-five days from the date of notice. D.E. 186 at 47. Plaintiffs originally proposed an opt-in deadline of December 31, 2013, D.E. 168-1 at 4, but their subsequent reply requests an opt-in period of at least ninety days from the date of notice, D.E. 197 at 43. Common practice provides an opt-in period of ninety days from the date

of notice. *See* D.E. 197 at 43-44. Therefore, each individual shall have ninety days from the date of the Court's approval of Plaintiffs' revised notice-and-consent form to reply.

Finally, the consent form itself [D.E. 168-1 at 7] shall be amended to mirror the format and contents of the forms used in *Bennett* and *Bell*. Notably, employees should be able to write in their positions (server, bartender, or both), and the time period during which they were employed at a Darden restaurant. And like in *Bennett* and *Bell*, the consent form should not merely declare the employee's consent to be represented by Plaintiffs' counsel but also aver that the employee has claims of alleged FLSA violations similar to those of Plaintiffs.

## II. Plaintiffs' Motion to Invalidate

Plaintiffs separately move to invalidate Defendants' program of providing payments of back wages to their employees in exchange for the employees' signatures on an Employee Acknowledgment form recognizing payment. D.E. 169. Plaintiffs allege that since the commencement of this lawsuit, Defendants have offered checks to their employees covering back pay that Defendants owed them. *Id.* at 3. In some instances, Plaintiffs claim, in order to receive the checks, employees were required to sign an Employee Acknowledgment form stating, among other things, that the employee has been "paid for all hours worked." *Id.* In addition, Plaintiffs assert that these interactions were conducted in violation of this Court's March 4, 2013, Order, which precludes Defendants from "question[ing] any Plaintiffs regarding the subject matter of this lawsuit without first alerting Plaintiffs' counsel and providing Plaintiffs' counsel with the opportunity to be present

at any such questioning." D.E. 119. Defendants retort that these interactions were valid and that the March 4, 2013, Order applied to only one instance of the interactions, an admitted "mistake" that Defendants have taken steps to rectify. D.E. 181 at 7.

### (A) Defendants' Allegation of Failure to Meet and Confer

As a threshold matter, Defendants contend that the Court should deny the Motion because of Plaintiffs' counsel's failure to adequately meet and confer with Defendants' counsel prior to the filing of the Motion. D.E. 181 at 8. Rule 7.1(a)(3) of the Local Rules of this Court requires,

> Prior to the filing of any motion in a civil case . . . counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion.

Failure to confer or to show a good-faith attempt to confer, by itself, constitutes grounds for the motion to be denied. *Muzaffarr v. Ross Dress for Less, Inc.*, 2013 WL 1776656, at *3 (S.D. Fla. April 25, 2013), *reconsideration denied* (Apr. 30, 2013). Yet even where a violation of Local Rule 7.1 occurs, the Court enjoys discretion to decide whether to deny the motion because of the violation. *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1302 (S.D. Fla. 2010) (choosing not to deny motions based on even "egregious" and "troublesome" violations of Local Rule 7.1 because denial would "unfairly penalize the parties, who presumably had no involvement in their counsel's violations.").

Defendants here do not allege that Plaintiffs altogether failed to meet and confer before filing the motion. Rather, they allege that Plaintiffs' efforts to confer were not in good faith because Plaintiffs filed the motion merely one full business day after alerting Defendants of their intent to

so move. D.E. 181 at 7. Defendants cite to *Royal Bahamian Association*, 744 F. Supp. 2d 1297, as an instance where a court of this District declared that it could find a violation of Local Rule 7.1(a)(3) where, even if the parties did confer, insufficient time elapsed between the conference and the filing of the motion. D.E. 187 at 8-9. In that case, the movants emailed the opposing parties to alert them of the motion after business hours and then filed the motions the same evening or the next morning before receiving replies from the opposing parties. *Royal Bahamian Ass'n*, 744 F. Supp. 2d at 1299-1300. The court there found the movants' emails to be akin to "one-way missive[s]" that lacked the "give-and-take exchange" implicit in the act of meeting and conferring. *Id.* at 1299 n. 3 (citing *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 2008 WL 5427785, at *1 (S.D. Fla. Dec. 30, 2008) (stating that "[s]imply sending a letter without further follow-up does not constitute the type of effort to engage in a pre-filing conference anticipated by Local Rule 7.1")). Thus, the *Royal Bahamian* conferences did not suffice because of their unidirectional nature and because of the lack of a reasonable opportunity for opposing counsel to respond.

This case is materially distinguishable from *Royal Bahamian*. Here, Defendants' counsel spoke with Plaintiffs' counsel by telephone for approximately fourteen minutes about the motion, and an email exchange, though terse, occurred before the filing of the motion. D.E. 189-1 at 3. In addition, a full business day passed between the email and the filing of the motion. Though the Court finds that rushing through the Local Rule 7.1 conference frustrates the intent behind the rule to encourage, as much as possible, parties to agree on issues independently of the court, the conference between the parties here, though less than ideal, does not constitute a violation of Local Rule 7.1. As a result, the Court declines to deny Plaintiffs' Motion because of a failure to confer.

### (B) Plaintiffs' Motion to Invalidate

As to the merits of Plaintiffs' Motion whether to invalidate the communications and payments between Defendants and their employees, the Court concludes that the Motion must be granted in part and denied in part. In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), a Rule 23 class-action case, the Supreme Court considered the appropriateness of communications sent from Plaintiffs' counsel to potential class members.[4] There, the Court recognized that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* Nevertheless this discretion is not without limits; because of First Amendment concerns, such court orders must not restrict communications "'without a specific record showing by the moving party of the particular *abuses* by which it is threatened.'" *Id.* at 100-102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3rd Cir. 1977), *cert. denied*, 434 U.S. 985 (1977)) (emphasis added). "[U]ntruthful or misleading speech has no claim on first amendment immunity." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1204 (11th Cir. 1985) (citing *Central Hudson Gas Co. v. Public Service Commission*, 447 U.S. 557, 566 (1980); and *Virginia State Board of Pharmacy v. Virginia Citizens Council*, 425 U.S. 748, 771 (1976)).

---

[4] As previously noted, FLSA collective actions differ from Rule 23 class actions. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1532 (2013) (conditional certification under FLSA § 216(b) "is not tantamount to class certification under Rule 23"); *Grayson*, 79 F.3d at 1096 n. 12 ("it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."). But on the issue of communications directed at potential class members, as discussed *infra*, when analyzing communications in FLSA collective actions, courts of this Circuit find precedent from Rule 23 cases instructive. *See Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009); *Longcrier*, 595 F. Supp. 2d at 1226; *and Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1367 (S.D. Ga. 2008).

Courts have interpreted *Gulf Oil* to require two showings: (1) a particular form of communication has occurred or is threatened to occur, and (2) the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation. *See, e.g.*, *Cox Nuclear Med. v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003); *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009) (applying factors in FLSA action); *Longcrier*, 595 F. Supp. 2d at 1226 (same); *Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1367 (S.D. Ga. 2008) (same). Abusive practices include those that are coercive, false, misleading, or confusing, and those that otherwise "undermine cooperation with or confidence in class counsel." *Id.* at 698.

In *Ojeda-Sanchez*, for example, the court found abusive and coercive actions by the defendants' representatives when they entered the homes of two plaintiffs, threatened to terminate their employment if they continued to participate in the litigation, took pictures of the plaintiffs and their families, and caused the plaintiffs to fear that they could be harmed in the future. *Ojeda-Sanchez*, 600 F. Supp. 2d at 1376-78. In *Longcrier*, the court found misleading and deceptive the defendant employer's requirement that employees complete a "survey" that was nothing more than the defendant's attempt to elicit data to use against these same employees during litigation. *Longcrier*, 595 F. Supp. 2d at 1227-28.

In the present case, no doubt exists that the communications in question occurred, as both sides have submitted declarations attesting to this fact. Plaintiffs must then show that the communications were "abusive" and "threatened the proper functioning of the litigation." *Cox Nuclear*, 214 F.R.D. at 697-98. Plaintiffs have largely failed to make such a showing.

First, nothing indicates that the communications in question were particularly coercive or

intimidating. To the contrary, some employees apparently made a special trip to their workplaces when not scheduled to work in order to receive the checks. D.E. 181-2 at 2-3. Though Plaintiffs in their Reply allege that Defendants intimidated employees such as Angela Viggiani by terminating them if they admitted to working off the clock, D.E. 189 at 8, there is no indication that this alleged intimidation or retaliation was related specifically to the back-wages payment program that Plaintiffs here challenge. D.E. 189-2 at 1-3 (stating that Ms. Viggiani was terminated the same day she received the back pay, but not indicating that her termination was conditioned on either refusal or acceptance of the back pay).

Second, nothing about the communications should have misled employees into volunteering information that they otherwise would not have. Darden's managers were instructed not to question employees regarding the subject matter of the lawsuit during these communications, D.E. 181-1 at 2-3; D.E. 181-2 at 2-3, and nothing in the filings indicate that managers did ask employees to provide such information.

Third, Plaintiffs point to nothing to show that the communications did anything to undermine employees' confidence in or cooperation with class counsel. Nor can the Court find evidence of any aspect of the program likely to do that.

But the communications might implicate factors that threaten the proper functioning of this litigation. While the Court agrees with Defendants that nothing in the Employee Acknowledgment form contained language that would waive an employee's rights to participate in this litigation or to participate in separate litigation if the employee chose not to opt in here,[5] the Employee

---

[5] Both sides agree that even if the form were to contain such language of waiver, it would be unenforceable because "FLSA rights cannot be abridged by contract or otherwise waived." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept. of Labor, Employment Standards Admin., Wage*

Acknowledgment form did contain language that could have a serious effect on an employee's ability to succeed in this litigation.

The Employee Acknowledgment form that potential class members signed includes the statement that "I agree with this payment and that I have been paid for all hours worked." D.E. 169-2 at 3. In addition, Defendants have given employees no explanation of how they determined the amounts of the payments.

Thus, employees who accepted payments are now purported to be bound by the statements in the Employee Acknowledgment form stating that they have been paid for all hours worked while not knowing whether, in fact, that is the case. Making matters worse, Plaintiffs who accept payment and sign the Employee Acknowledgment form, and then exercise their right to participate in this or any other FLSA action, are thus placed in a compromised position at trial because these prior statements would be inconsistent with any assertion that they have not been paid all back wages, even if they later learn that Defendants miscalculated the back-wages payments. *See* Fed. R. Evid. 613.

These Plaintiffs thus risk potentially unfair impeachment of their testimony because of their signed agreements that they have been paid for all hours worked. In addition, as a result, some who may have legitimate claims may be chilled from bringing them because of the prior acknowledgments in the form that they have been paid all back wages. For all of these reasons, the Court grants Plaintiffs' Motion to remove the phrase that the employee "has been paid for all hours

---

*& Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982) (quoting *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740 (1981)). Courts have a responsibility to oversee FLSA settlements, even when an employee receives "all wages due." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Lynn's Food Stores*, 679 F.2d at 1352).

worked" from the Employee Acknowledgment form.

Plaintiffs' notice and consent form shall retain the prominent, bold-face text that states that employees who accepted the back-pay checks or signed the Employee Acknowledgment form may still join this litigation. That text reads, "[E]ven if you have received a check for back wages or have signed an Employee Acknowledgment form indicating that you have been paid all wages for all hours worked, you are still eligible to join this lawsuit." D.E. 168-1 at 3.

Plaintiffs separately claim that Defendants' actions should be invalidated because the fact that the payments show no indication of how the amount of back pay was calculated leaves open the possibility that the payments are not making employees fully whole. Yet assuming *arguendo* that the employees in question indeed were not fully paid for all back wages due, the employees nevertheless retain all rights to join this or another lawsuit to recover any remaining back pay due, plus liquidated damages. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 114 (1946) (holding that, in FLSA actions, "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage."). Nor does the receipt of partial payments compromise the employees' claim for still-unpaid wages in light of the striking from the Employee Acknowledgment form of the language that the employee "has been paid for all hours worked." Thus, even if not made entirely whole by Defendants' payments, the employees, whose legal rights remain unchanged, are nevertheless better off than they were before the payments. If an employee who receives such a payment desires to join a lawsuit to recover the rest of the payment or liquidated damages, that option remains open. In short, this Court declines to find Defendants' communications abusive, misleading, or coercive. Nevertheless, to avoid unfairly affecting the litigation, Defendants shall remove the phrase in future copies of the Employee Acknowledgment form that Plaintiffs agree that they have been paid for "all

hours worked."

### (C) The Court's March 4, 2013, Order

Finally, the Court turns to Defendants' payments in relation to the Court's March 4, 2013, Order. That Order instructed Defendants "not to question any Plaintiffs regarding the subject matter of this lawsuit without first alerting Plaintiffs' counsel and providing Plaintiffs' counsel with the opportunity to be present at any such questioning." D.E. 119. As the transcript of the relevant hearing makes clear, the Order applies to communications with "employees who are members of the class," *i.e.*, "[P]laintiff class members." D.E. 169-1 at 3-4.

There is nothing improper about Defendants' speaking with putative class members who have not yet joined the litigation to gather facts to support their defense, unless those communications are found to be abusive. *Kerce*, 575 F. Supp. 2d at 1366-67. Accordingly, the Court hereby clarifies that its March 4, 2013, Order applies only to communications with named Plaintiffs who have filed notices of consent to join the litigation with the Court.

Plaintiffs further note that, though most of the communications in question occurred with employees who have not joined the lawsuit, in at least one instance, Defendants made payment for back wages to an individual who had already joined this suit at the time of payment. D.E. 169 at 4-5. Yet as the Court transcript makes clear, the Order applies to "question[ing] about subject matter that falls within the bounds of this particular lawsuit," such as "working overtime; why overtime was worked; why the break start key was used to exclude hours from the overtime," *et cetera*. D.E. 169-1 at 3. Essentially, the Order prevents Defendants from "eliciting information from [P]laintiffs regarding the subject matter of this lawsuit" without prior notice to Plaintiffs' counsel and the

opportunity for Plaintiffs' counsel to be present. D.E. 169-1 at 4.

While the Court condemns Defendants' actions in conferring with a represented party in this action, the Court nonetheless recognizes that this communication appears to have resulted from a genuine accident. Moreover, the record does not demonstrate that Defendants attempted to elicit information regarding the subject matter of this lawsuit in connection with the payment, nor does it show that the opt-in Plaintiff who accepted payment provided such information.[6] *See* D.E. 169-3. Moreover, significantly, Defendants have convincingly shown that they did not intend to provide back pay to those who have already joined the lawsuit, that the payment was provided to the single employee who is already a class member through genuine error, and that they have taken measures to prevent opt-in Plaintiffs from receiving similar payments for back wages in the future. D.E. 181 at 2-4. The Court therefore finds that Defendants have not violated the March 4, 2013, Order with respect to the payments made to employees who had not joined the litigation at the time and declines to take further action against Defendants with regard to the lone employee who had.

### CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Plaintiffs' Motion for Conditional Certification [D.E. 168] is **GRANTED** with respect to

---

[6] The only indication in the filings of an attempt by Defendants to elicit information concerning the subject matter of the lawsuit, a "questionnaire related to work off the clock," was given in February 2013, before issuance of the Order, D.E. 189-2 at 2, and was given to Angela Viggiani, who was not a party to the lawsuit at the time, *see* D.E. 163-1 at 9.

the class of servers and bartenders employed at Defendants' restaurants between September 6, 2009, and September 6, 2012;

2. Defendants are directed to furnish Plaintiffs immediately, if they have not already done so, with the names and addresses of all members of the conditionally certified class;

3. Plaintiffs are **ORDERED** to modify their Notice and Consent form in accordance with Section I-(C) of this Order and to submit it to opposing counsel and to the Court no later than **July 26, 2013,** for approval before mailing it to the class of potential opt-in plaintiffs conditionally certified pursuant to this Order;

4. Plaintiffs are required to file all Consents to Become Party Plaintiffs in this lawsuit within **ninety (90) days** of the Court's approval of their Notice and Consent form;

5. Plaintiffs' Motion to Invalidate [D.E. 169] is **GRANTED** in part. Defendants shall remove from their Employee Acknowledgment forms language that states that the employee acknowledges that he or she has been paid in full for all hours worked.

6. In all other aspects, Plaintiffs' Motion to Invalidate [D.E. 169] is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 12th day of July 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record