**EXHIBIT 82**

# EXPERT REPORT

BY

# CUTLER CONSULTING SERVICES LLC

### Nicole Alequin, et al,
Plaintiffs,

v.

### Darden Restaurants, Inc.,
### GMRI, Inc.,
Defendants.

Case No.: 0:12-cv-61742-Rosenbaum/Seltzer
Judge: Robin S. Rosenbaum
United States District Court
Southern District of Florida

Submitted to:
Mr. David H. Lichter, Esq.
Mr. J. Paxton Marshall, Esq.
Higer Lichter & Givner LLP
Bank of America Building, Suite 302
18305 Biscayne Blvd.
Aventura, FL 33160
Tel. (305) 933-9970
Fax (305) 933-0998
Email: PMarshall@HLGLawyers.com

This report is hereby signed in conformance with
Federal Rule of Civil Procedure Rule 26(a)(2)(B):

_____ Date: March 28, 2014

William J. Cutler, Jr., SPHR
Compensation and Wage & Hour Consultant
Cutler Consulting Services LLC
11131 Brooklawn Drive
Hudson, Florida 34667
Office: (352) 588-5425
Fax:   (727) 857-3002

# Table of Contents

| Index | Topic | Page |
|---|---|---|
| I | Review | 4 |
| II | Opinions | 24 |
| Appendix 1 | Expert Witness Civil Procedure Rule 26(a)(2)(B) Disclosures | 43 |
| Appendix 2 | Curriculum Vitae – William J. Cutler, Jr. | 55 |
| Appendix 3 | List of Regulatory Related Documentation Used For Reference | 67 |
| Appendix 4 | List of Documents Provided by Counsel For Review | 69 |
| Appendix 5 | List of Named Plaintiffs and Darden Representatives Depositions | 71 |
| Appendix 6 | Part 776 - Interpretative Bulletin on the General Coverage of the Wage and Hours Provisions of the FLSA of 1938 | 73 |
| Appendix 7 | Fair Labor Standards Act of 1938 (Revised May 2011) | 105 |
| Appendix 8 | Title 29 Regulations Part 516: Records To Be Kept By Employers | 170 |
| Appendix 9 | 29 C.F.R. PART 531 - Wage Payments Under the FLSA of 1938 | 184 |
| Appendix 10 | FOH Section 30d - Tips And Tipped Employees -12/9/88 | 198 |
| Appendix 11 | Fact Sheet #15 Tipped Employees Under the FLSA - whdfs15 | 207 |
| Appendix 12 | Senate Report No. 93-960, February 22, 1974 | 212 |
| Appendix 13 | Title 29 Regulations Part 778: Overtime Compensation | 361 |
| Appendix 14 | Title 29 Regulations Part 785: Hours Worked | 410 |
| Appendix 15 | Darden Server and Bartender Survey Forms | 424 |
| Appendix 16 | Prior Investigations of Darden by the US DOL WHD | 446 |
| Appendix 17 | Darden's Internal Investigations Documentation | 562 |
| Appendix 18 | Darden's Assigned Duties to Tipped Employees | 576 |
| Appendix 19 | Tipped Employee Managerial Utilization Reports Prepared By Darden | 609 |

| Appendix 20 | WH-42 DOL WHD Mail Interview Form | 715 |
|---|---|---|
| Appendix 21 | Mr. Alfred A. Robinson Statement Regarding WHD Mail Interview Form | 722 |
| Appendix 22 | Fast v. Applebee's Case Order Regarding Opinions by William J. Cutler, Jr. | 729 |
| Appendix 23 | Court Decisions Regarding Hours Worked for Tipped Employees | 748 |
| Appendix 24 | Clock In/Clock Out Reports | 787 |

# I. REVIEW

I was retained by the law firms of Higer Lichter & Givner LLP, Trief & Olk, and Cohn, Lifland, Pearlman, Herrmann & Knopf LLP, on December 26, 2013. I was informed that the law firms represented Plaintiff employees in a Fair Labor Standards Act ("FLSA") collective action lawsuit titled Nicole Alequin, et al., plaintiffs, (hereinafter referred to in this report as "Named Plaintiffs and Opt-ins") versus Darden Restaurants, Inc., and GMRI, Inc., defendants (hereinafter referred to in this report as "Darden").

The lawsuit was filed on September 6, 2012. I understand that the case period subject to my review is from September 6, 2009 through September 6, 2012.

I was asked to review and analyze the existing facts involved in the subject case, and opine regarding Darden's status of compliance with the applicable provisions of the Fair Labor Standards Act on the topics listed in the "Opinions" section of this report.

A copy of my expert witness qualifications and disclosures in conformance with Federal Rule of Civil Procedure Rule 26(a)(2)(B) are attached to this report as Appendix 1.

A copy of my Curriculum Vitae (CV) is attached to this report as Appendix 2.

A list of sources of FLSA regulatory-related documentation that were available for my review and reference, and that I relied upon, in part, in preparing this report is attached to this report as Appendix 3.

Plaintiffs' counsel provided for my review various documents relative to the subject case, some of which were produced by the parties in discovery. A list of the documents that were provided by Plaintiffs' counsel for my review, and that I relied upon, in part, in preparing this report, is attached to this report as Appendix 4.

**Report Style**

I am using the same report writing style that I used while employed by the U.S. Department of Labor, Wage and Hour Division as a Compliance Officer/Specialist. This style includes the use of titles of specific sections of wage and hour documentation as references in my investigative reports. However, in this report, and for the ease of review by the reader, I am including not only the titles of references but also excerpts of the full supporting text of the referenced wage and hour documentation, or providing the supporting text as an appendix to this report. Sections in this report may be highlighted in yellow and/or underlined in red to represent a section of text in which the emphasis is mine.

**Report Limitations**

This lawsuit was filed on September 6, 2012. This report is limited to a review and analysis of the provisions of the FLSA that were applicable from September 7, 2009 through September 6, 2012 and are applicable to those FLSA-related issues specifically identified and requested for an opinion by Plaintiffs' counsel.

**Authorities Used**

The authorities[1] that I primarily reference in this report consist of: FLSA Statutes and Code of Federal Regulations; U.S. Department of Labor, Wage and Hour Division Interpretative Bulletins; excerpts from the U.S. Department of Labor, Wage and Hour Division's Field Operations Handbook (FOH); U.S. Department of Labor, Wage and Hour Division opinion letters (OLs); and other FLSA-related materials such as court decisions.

**The Code of Federal Regulations and Interpretative Bulletin References**

As stated by the Wage and Hour Division:

---

[1] *The sections of the FLSA and related regulations referenced in this report have been copied from U.S. Department of Labor Wage and Hour Division documentation that is posted and readily available to the public on the official Wage and Hour Division website at http://www.dol.gov/whd/publications/ and/or http://www.osha.gov/pls/epub/wageindex.list.*

*"Interpretative bulletins are published by the U.S. Department of Labor, Wage and Hour Division, to assist in interpreting the various provisions of the Fair Labor Standards Act. The interpretations set forth within an interpretative bulletin are intended to indicate the construction of the law which the Wage and Hour Division's Administrator believes to be correct and which will guide him in the performance of his administrative duties under the Fair Labor Standards Act, unless and until he is directed otherwise by authoritative rulings of the courts or concludes, upon re-examination of an interpretation, that it is incorrect. As the Supreme Court has pointed out, such interpretations provide a practical guide to employers and employees as to how the office representing the public interest in enforcement of the law will seek to apply it. ... The correctness of an interpretation of the Fair Labor Standards Act, can be determined finally and only by the courts."* [2]

### Field Operations Handbook (FOH) References

The Department of Labor's Wage and Hour Division published a "Field Operations Handbook" (FOH) that is used by the Wage and Hour Divisions' Compliance Officers/Specialists for guidance when conducting FLSA-related investigations. The Wage and Hour Division has used the contents of the FOH as an authoritative reference when preparing their opinion letters that contain official determinations of applicable provisions of the FLSA. The courts have also used the contents of the FOH as an authoritative reference in their decisions involving the FLSA.

### Opinion Letter References

The Wage and Hour Division has periodically issued documents titled "Opinion Letters" that have historically provided FLSA-related guidance to employers. Opinion Letters contain the weight of regulation of the Department's official interpretation and are generally given deference by the courts.

### Court Decisions

I reviewed a number of court decisions that relate to the types of FLSA issues that exist in this case and I used them as references in preparing this report.

---

[2] *Wage and Hour Division publication: As to the Effect of the Portal-To-Portal Act of 1947 on the Fair Labor Standards Act of 1938, General, § 790.1, Introductory Statement, (c).*

**Plaintiffs' Allegations**

I have reviewed the <u>Second Amended Collective Action Complaint</u>, and I understand that an FLSA collective action has been initiated against Darden to challenge Darden's practice of failing to pay the full amount of the applicable FLSA minimum hourly wage rate to employees who are classified as "Tipped Employees." These tipped employees allegedly 1) perform "unrelated work" or 2) performed general preparation and/or maintenance and/or other non-tipped related work in excess of twenty percent (20%) of their total amount of work time while employed in a Server's capacity and/or in a Bartender's capacity for Darden.  These employees are allegedly not paid at least the fully applicable FLSA minimum wage hourly rate while performing such duties. Additionally, these workers were allegedly not compensated for non-recorded and compensable time worked that resulted in violations of applicable minimum wage and overtime violations under the FLSA.

Additional details relating to the plaintiffs' allegations are contained in the transcripts of fourteen depositions of the named Plaintiffs and five depositions of Darden's corporate representatives that have been provided to me. A list of these transcripts is attached to this report as Appendix 5.

**The Provisions of the FLSA**

The Fair Labor Standards Act, in part, requires that an employer subject to FLSA maintain accurate records of hours worked by employees, pay at least the federal minimum wage for each straight time hour worked by nonexempt hourly rated employees, and pay time-and-one-half the employee's regular rate of pay to each nonexempt hourly rated employee for each overtime hour worked in excess of forty hours worked in a workweek.

**Coverage Under the FLSA**

Darden and its subsidiaries are fully subject to the provisions of the FLSA throughout the case period. Coverage under all provisions of the FLSA relative to this case during the case period have been reported as being acknowledged and accepted as applicable by Darden and its subsidiaries.

Darden and its subsidiaries have operated as an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d). Darden has operated as an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and has engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). The defendant has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and has had an annual gross volume of sales made or business done of well in excess of the required $500,000. Darden, through a Joint Stipulation and Proposed Order Regarding Dismissal of Certain Defendants, has stipulated to being fully subject to the enterprise provisions of the Fair Labor Standards Act throughout the case period.

A copy of Part 776 —Interpretative Bulletin on the General Coverage of the Wage and Hours Provisions of the Fair Labor Standards Act of 1938 details the requirements for coverage under the FLSA and is attached to this report as Appendix 6.

**FLSA RECORDKEEPING REQUIREMENTS**

**FLSA Recordkeeping - FLSA Statutes**

The following sections of the FLSA reference the applicable recordkeeping provisions of the FLSA that are related to the issues in this case:

> *"Fair Labor Standards Act (Title 29 United States Code, Chapter 8)...*
>
> *§211 Collection of data*
>
> *(c) Records*
> *Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."* ...

An employer's fabrication or falsification of a record of hours worked subject to the FLSA can result in a violation of the FLSA under §215(a)5 that is detailed as follows:

*"§215 Prohibited Acts; Prima Facie Evidence*

*(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—*

*(5) to violate any of the provisions of section 211 (c) of this title, or any regulation or order made or continued in effect under the provisions of section 211 (d) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect."*

A copy of the <u>Fair Labor Standards Act of 1938</u> (Revised May 2011) is attached to this report for reference as Appendix 7.

**FLSA Recordkeeping - Interpretative Bulletin**

Darden is fully subject to the following applicable recordkeeping regulations of the FLSA. Excerpts from the <u>Code of Federal Regulations, Title 29, Chapter V, Wage and Hour Division, Department of Labor, Subchapters A and B</u> provide established rules governing compliance with the FLSA and applicable federal wage and hour regulations that are relative to the FLSA issues in the subject case.

The Interpretative Bulletin <u>Title 29 Regulations Part 516: Records To Be Kept By Employers</u> contains the interpretative guidelines that are relative to recordkeeping under the FLSA. These guidelines are detailed as follows:

*"Title 29 C.F.R. § 516.1 Form of records; scope of regulations.*

*(a) Form of records. No particular order or form of records is prescribed by the regulations in this part. However, every employer subject to any provisions of the Fair Labor Standards Act of 1938, as amended (hereinafter referred to as the ''Act''), is required to maintain records containing the information and data required by the specific sections of this part. . . ."*

*"Title 29 C.F.R. § 516.2 Employees subject to minimum wage or minimum wage and overtime provisions pursuant to section 6 or sections 6 and 7(a) of the Act.*

*§516.2(a) Items required. Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each employee to whom section 6 or both sections 6 and 7(a) of the Act apply:*

(1)  *Name in full, as used for Social Security recordkeeping purposes, and on the same record, the employee's identifying symbol or number if such is used in place of name on any time, work, or payroll records,*

(2)  *Home address, including zip code,*

(3)  *Date of birth, if under 19,*

(4)  *. . .*

(5)  *Time of day and day of week on which the employee's workweek begins . . .*

(6)  *Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),*

(7)  *Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),*

(8)  *Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,*

(9)  *Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,*

(10)  *Total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions,*

(11)  *Total wages paid each pay period,*

(12)  *Date of payment and the pay period covered by payment."*

In addition to the general recordkeeping requirements stipulated above, the FLSA requires additional recordkeeping requirements for employers of "tipped employees."  These additional recordkeeping requirements for employers of "tipped employees" are listed below:

**"§516.28  Tipped employees.**

§ 516.28(a):  *With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing all the information and data required in §516.2(a) and, in addition, the following:*

(1)  *A symbol, letter or other notation placed on the pay records identifying each employee whose wage is determined in part by tips.*

(2) *Weekly or monthly amount reported by the employee, to the employer, of tips received . . . .*

(3) *Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer (not in excess of the difference between $2.13 and the applicable minimum wage specified in section 6(a)(1) of the Act). The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week.*

(4) *Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.*

(5) *Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours."*

A copy of <u>Title 29 Regulations Part 516: Records To Be Kept By Employers</u> is attached to this report as Appendix 8.

## FLSA MINIMUM WAGE PROVISIONS

## FLSA Minimum Wage – FLSA Statute

The provisions of the FLSA set the minimum wage in terms of an hourly rate in accordance with Title 29 U.S.C. §206(a). The federal minimum wage provisions for covered, nonexempt employees are contained in the FLSA. The Fair Minimum Wage Act of 2007 included phased increases to the federal minimum wage. The FLSA minimum wage rate applicable throughout the case period is $7.25 per hour.

## FLSA Section §218(a) - Relationship to Other Laws

The FLSA also states the following with respect to applicable state regulations and the applicable FLSA minimum wage rate.

*"§ 218. Relation to Other Laws*

*(a) No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter. . . No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter."*

**Tipped Employee Wages Under the FLSA**

**The Tipped Employee Wage - Federal Statutes**

The statutory references to the FLSA provisions relative to a "Tipped Employee" under the FLSA are provided as follows:

> *"Fair Labor Standards Act (Title 29 United States Code. §201, et seq., Chapter 8)...*
>
> *Sec. 3(m)...*
>
> *Wage*
>
> *... In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to —*
>
> > *(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and*
> >
> > *(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 6(a)(1).*
>
> *The additional amount on account of tips may not exceed the value of the tips actually received by an employee.*
>
> *(t) 'Tipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."*

**Tipped Employee - Interpretative Bulletin**

The Interpretative Bulletin <u>29 C.F.R. PART 531 - Wage Payments Under the Fair Labor Standards Act of 1938</u> contains the interpretative regulatory provisions applicable to tipped employees. These provisions are provided as follows:

> *" § 531.56 "More than $30 a month in tips.*
> > *(a) In general. An employee who receives tips, within the meaning of the Act, is a "tipped employee" under the definition in section 3(t) when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total "more than $30 a month. ...*
> >
> > *. . .*
> >
> > *(d) Significance of minimum monthly tip receipts. More than $30 a month in tips*

*customarily and regularly received by the employee is a minimum standard that must be met before any wage credit for tips is determined under section 3(m). It does not govern or limit the determination of the appropriate amount of wage credit under section 3(m) that may be taken for tips under section 6(a)(1) (tip credit equals the difference between the minimum wage required by section 6(a)(1) and $2.13 per hour).*

**(e) _Dual jobs._** *In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips. "*

A copy of the Interpretative Bulletin <u>29 C.F.R. PART 531 - Wage Payments Under the Fair Labor Standards Act of 1938</u> is attached to this report as Appendix 9.

**Tips and Tipped Employees - The Field Operations Handbook (FOH)**

The Wage and Hour Division's FOH contains the following reference relative to "Tips and Tipped Employees:"

"*Rev. 563    FIELD OPERATIONS HANDBOOK - 12/9/88    30d – 30d01*

*30d   TIPS AND TIPPED EMPLOYEES*

*30d00   General.*

(a)    *A 'tipped employee', as defined in section 3(t) of FLSA, is any employee engaged in an occupation in which the individual customarily and regularly receives more than $30.00 a month in tips.*

(b)    *Section 3(m) of FLSA makes clear the intent of Congress to place on the employer the burden of proving the amount of tips received by 'tipped employees', and the amount of tip credit, if any, which the employer may claim.  <u>Since Sec. 3(a) is not an exemption from the MW, but merely allows the employer to claim up to 40 percent of the MW as tip credit, the employer is responsible for ascertaining that the MW provisions are complied with in compensating 'tipped employees'.</u>*

(c)    (1) . . .

(2) *In establishments where employees perform a variety of different jobs, an employee's status as one who 'customarily and regularly receives tips' <u>will depend on the total fact situation and will be determined on the basis of such employee's activities over the entire w/w.</u>( w/w = workweek-definition is my input)*

(d) <u>*When an individual is employed in a tipped occupation and a non-tipped occupation (dual jobs), the tip credit is available only for the hours spent in the tipped occupation*</u>. . . .

(e) <u>*Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips*</u> *(i.e.* <u>*maintenance and preparatory or closing activities*</u>*). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are* <u>incidental</u> *to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. <u>However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.*</u> " . . .

*Rev. 563*     **FIELD OPERATIONS HANDBOOK - 12/9/88**     *52n - 52n00*

**SPECIAL PROCEDURES - TIP CREDIT**
*'Tips' and 'Tipped employees.'*

(a)     *In all cases where an employee has been paid less than the applicable MW in cash and the employer claims wage credit for tips, it is first necessary to determine whether the employee is a 'tipped employee.' as defined in section 3(t) of FLSA, and, if so, to determine the period or periods of employment in which the employee so qualifies. (See FOH 30d.) If the employee does not qualify in any period or periods as a tipped employee or if tip credit has been otherwise improperly claimed, the CO shall follow regular investigative procedures to determine compliance and BW liability for such period or periods.* "

A copy of FOH Section 30d  - TIPS AND TIPPED EMPLOYEES Dated 12-18-88 is attached to this report as Appendix 10.

The U.S. Department of Labor's Wage and Hour Division has published  a Tipped Employee Fact Sheet that is readily accessible by the general public on the U.S. Department of Labor, Wage and Hour Division's website, *http://www.dol.gov/whd/regs/compliance/whdfs15.pdf* , and provides information about "Tipped Employees under the FLSA."

A copy of the U.S. Department of Labor, Wage and Hour Division's  <u>Fact Sheet #15 Tipped Employees Under the FLSA - whdfs15</u> is attached to this report as Appendix 11.

**Tipped Employee - Opinion Letter**

Opinion Letter FLSA-854, which has been used as a reference in legal actions relative to the FLSA and tipped employees, is provided for review:

> *"FLSA-854*
> *December 20, 1985*
>
> *This is in response to your letter of June 20 in which you request an opinion as to whether salad bar and dining room set-up are duties related to a tipped occupation within the meaning of section 3(m) of the Fair Labor Standards Act (FLSA). We regret the delay in responding to your inquiry.*
>
> *As outlined in your letter and in a conversation with a member of my staff on November 26, \*\*\* owns and operates several \*\*\* restaurants throughout the United States. \*\*\* regularly open to the public at 11 a.m. Generally, you state, two to four waiters or waitresses work each day in each restaurant. One waiter or waitress is assigned with opening responsibilities from 9:00 or 9:30 am, to 11:00 a.m. These opening responsibilities are as follows:*
>
> > *(1)  Inspect dining room including windows and sills.*
> > *(2)  Check dining room lights.*
> > *(3)  Set thermostat.*
> > *(4)  Check tables and align table bases.*
> > *(5)  Check high chairs/booster seats.*
> > *(6)  Set tables.*
> > *(7)  Set table arrangers.*
> > *(8)  Clean and fill shakers.*
> > *(9)  Clean/replace ashtrays.*
> > *(10) Stock waitress station with glasses, cups, mugs, and pitchers.*
> > *(11) Check supplies of napkins, sugar, straws, etc.*
> > *(12) Check supply and cleanliness of plates, salad plates and silverware.*
> > *(13) Set up three (3) compartments, glass washing sink.*
> > *(14) Check beverage dispensers.*
> > *(15) Prepare tea.*
> > *(16) At opening, prepare coffee.*
> > *(17) Cut and clean vegetables for salad bar.*
> > *(18) Clean and sanitize sneeze shield on salad bar.*
> > *(19) Fill salad bar crocks with refrigerated and dry items.*
> > *(20) Place vinegar and oil cruets at end of salad bar.*
> > *(21) Place parmesan shaker on salad bar.*
> > *(22) If iced salad bar, fill ice bin.*
>
> *You state that typically the waiter or waitress with opening responsibilities works until 2 p.m. Any other waitresses working the lunch shift do not report until 10:30 or 11:00 a.m. You state that a small portion of the 1.5 to 2 hour set-up time is spent in preparing vegetables for the salad bar. You state that the salad bar preparation is a related duty in a tipped occupation, you cited Opinion Letter No. 1554 (WH-502) in which the Administrator of the*

*Wage and Hour Division found that duties such as cleaning and restocking the waitress station, refilling shakers, cleaning and resetting tables and vacuuming the carpet as performed by waitresses after hours constitute tipped employment within the meaning of Regulations 29 CFR Part 531.*

*In support of your position you also cite section 531.56(e) of 29 CFR Part 531. You compare the preparation of the salad bar to the preparation of short orders as performed by counter persons.*

*The FLSA is the Federal law of most general application concerning wages and hours of work. Under FLSA all covered and nonexempt employees must be paid not less than the minimum wage rate of $3.35 an hour for all hours worked and not less than one and one-half times their regular rates of pay for all hours worked over 40 in a workweek.*

*As explained in section 3(m) of FLSA, tips received by tipped employees may be counted by an employer in an amount up to 40%[3] of the applicable minimum wage. A "tipped employee" is defined in section 3(t) of FLSA as an employee engaged in an occupation in which he or she regularly receives not less than $30 a month in tips.*

*Section 531.56(e) deals with tipped employees who are performing dual jobs. As explained in this section, when an individual is involved in a tipped occupation and a nontipped occupation, the tip credit is available only for the hours spent in the tipped occupation. For example, when a maintenance person in a hotel also serves as a waiter or waitress, the tip credit is available only for the hours worked as a waiter or waitress.*

*The legislative history of the 1974 amendments of FLSA (in particular, page 43 of Senate Report No. 93-960, February 22, 1974) indicates that employees who "customarily and regularly" receive tips are waiters, waitresses, bell persons, counter persons, bus help, and service bartenders. It also indicates that janitors, dishwashers, chefs, and laundry room attendants are not tipped employees. It is our opinion that salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar. Enclosed is a copy of an opinion letter which contains a detailed discussion of this position.*

*Also as explained in section 531.56(e), the tip credit may be taken for time spent in duties related to the tipped occupation even though such duties need not by themselves be directed toward producing tips. For example, a waiter or waitress who spends part of his or her time cleaning and setting tables, toasting bread, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though the duties listed above are not tip-producing. Therefore, tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff. However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a*

---

[3] *Congress approved the first minimum cash payment for tipped employees in 1966. This first minimum cash payment for tipped employees was set at half the minimum wage which at that time was raised from $1.25 to $1.60. The federal tip minimum varied from 40% to 50% of the minimum wage until 1996, when Congress froze it at $2.13 per hour (half of the then-current minimum wage of $4.25) and then added a requirement that if an employee's average tips did not bring the total wage up to the minimum, the employer would make up the difference. The tip minimum has remained at $2.13 since 1996 through the present.*

*substantial amount of time in performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities.*

*In the situation you describe, only one waiter or waitress is assigned to perform all preparatory activities. The opening waiter or waitress' responsibilities extend to the entire restaurant rather than to the specific area of customers which they serve. Furthermore, the activities performed prior to the opening of the restaurant consume a substantial portion of the waiter or waitress' workday. Although you have stated that a waiter or waitress may work an eight-hour shift, typically they work a five-hour shift from 9 a.m. to 2 p.m. The 1.5 to 2 hours of preparatory time constitutes 30% to 40% of the employee's workday.*

*Therefore, based on the information you have provided, it is our opinion that <u>no tip credit may be taken for the hours spent by an assigned waiter or waitress in opening responsibilities</u>.*

*We trust that the above is responsive to your inquiry.*

*Sincerely,*
*Herbert J. Cohen*
*Deputy Administrator*
*Enclosure"*

Senate Report No. 93-960, February 22, 1974, referenced above, and supporting relevant documentation is attached to this report as Appendix 12.


## FLSA Minimum Wage – The Klinghoffer Rule


It should be noted that, under the FLSA, the only requirement for compliance with the payment of straight time hours worked in a workweek up to and including forty hours, is that the employee be paid not less than the prevailing federal minimum hourly wage rate for each straight time hour worked.


## FLSA OVERTIME PROVISIONS


## FLSA Overtime – Interpretative Bulletin


The rules for calculating the regular rate for overtime wages under section 7(a) of the FLSA are stated in *Title 29 Part §778.108 of the Federal Code* and are provided as follows:

*"Title 29 C.F.R. §778.100 The maximum-hours provisions*

*Section 7(a) of the Act deals with maximum hours and overtime compensation for employees who*

*are within the general coverage of the Act and are not specifically exempt from its overtime pay requirements. It prescribes the maximum weekly hours of work permitted for the employment of such employees in any workweek without extra compensation for overtime, and a general overtime rate of pay not less than one and one-half times the employee's regular rate which the employee must receive for all hours worked in any workweek in excess of the applicable maximum hours. The employment by an employer of an employee in any work subject to the Act in any workweek brings these provisions into operation. The employer is prohibited from employing the employee in excess of the prescribed maximum hours in such workweek without paying him the required extra compensation for the overtime hours worked at a rate meeting the statutory requirement."...*

**"Title 29 C.F.R. §778.104 Each workweek stands alone**

*The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. . . ."*

**"Title 29 C.F.R. §778.105 Determining the workweek**

*An employee's workweek is a fixed and regularly recurring period of 168 hours--seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole, or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. The proper method of computing overtime pay in a period in which a change in the time of commencement of the workweek is made, is discussed in §§778.301 and 778.302.*

**"Title 29 C.F.R. §778.315 Payment for all hours worked in an overtime workweek is required**

*In determining the number of hours for which overtime compensation is due, all hours worked (see §778.223) by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid."*

A copy of Title 29 Regulations Part 778: Overtime Compensation is attached to this report as Appendix 13.

**Field Operations Handbook (FOH) – FLSA Regular Rate Overtime Calculations**

The following section from the Wage and Hour Division's Field Operations Handbook under section 32b-32b00a contains guidelines for calculating a regular hourly rate and back overtime wages due:

"*32b-32b00a*        *FIELD OPERATIONS HANDBOOK*        *8/30/76*

*32b     Regular Rate Of Pay*

*32b00    Computation of regular rate of pay.    An employee's regular rate of pay is computed by dividing his total remuneration for his hours worked in the w/w, minus any true OT pay and any other specific statutory exclusions, by the number of hours of work for which the remuneration was paid.*

*32b00a    Regular rate for w/w's in which employee receives no pay or only partial payment.*

*(a) The regular rate for purposes of BW computations for OT weeks in which an employee subject to the OT provisions of the Act receives no pay or only part of his pay shall be determined on the basis of the established practice, agreement, or understanding. In the case of an employee paid solely on the basis of an hourly rate, this hourly rate shall be the regular rate for purposes of computations during such weeks. Similarly, where it is determined that the practice or agreement by which an employee's wages are computed is, for example, an established weekly salary, piece rate or day rate, such salary, piece rate or day rate shall be used to compute the regular rate. The following examples illustrate the application of this principle:*

*(1)    An employee works a total of 48 hours in a particular week and receives no pay for that w/w. He regularly receives a weekly salary of $96 as ST [straight time] payment for all hours in a week. For the w/w in question the employee's regular rate would be $2 an hour ($96 divided by 48 hours). He would be due $2 an hour for the first 40 hours and $3 an hour for each hour over 40 or a total of $104 for the week.*

*(2)    An employee is paid $1.90 per hour and has 38 recorded hours and has received $72.20 but has actually worked 44 hours. He would be due $1.90 for the 39th hour, $1.90 for the 40th hour, and $2.85 for each additional hour.*

*(b)    If the regular rate cannot be determined as in (a) above, or if the regular rate so determined is less than the legal minimum, the regular rate for OT purposes shall be the legal minimum (see FOH 32.501 and 32J02).*"

Any pre-shift and post-shift work constituting an integral and indispensable part of a principal activity or that constitutes a principal activity in itself, is compensable "hours worked," and must be recorded as hours worked, and the employee must be compensated for this time in accordance with the applicable provisions of the FLSA.

The Field Operations Handbook has been repeatedly cited by the courts as authoritative in cases addressing tip credit issues and the 20% rule involving servers and bartenders.  *See Fast v. Applebee's Int'l., Inc.*, 638 F.3d 872 (8th Cir. 2011); *Driver v. Applelllinois, LLC,* 890 F. Supp. 2d 1008 (N.D. Ill. 2012); *Ash v. Sambodrano,* 676 F. Supp. 1360 (S.D. Fla. 2009) (these decisions are found in Appendix 23).

## FLSA HOURS WORKED

### FLSA Hours Worked – Interpretative Bulletin

Title 29, Part 785 of the Code of Federal Regulations, Interpretative Bulletin on Hours Worked states the following with respect to compensable time and compensable meal periods:

> *"Title 29 C.F.R. §785.7 Judicial Construction*
>
> *The United States Supreme Court originally stated that employees subject to the act must be paid for all time spent in 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer of his business,' Coal, Iron & Railroad Co. v. Muscoda Local No. 123, 321 U. S. 590 (1944)).' Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer, that 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer.' "*
>
> *"Title 29 C.F.R. §785.11 General*
>
> *Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."*

*"Title 29 C.F.R. §785.12 Work Performed Away From the Premises or Job Site*

*The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked."*

*"Title 29 C.F.R. §785.13 Duty of Management*

*In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."*

*FLSA Hours Worked – De Minimis and Interpretative Bulletin 785*

*Title 29 C.F.R. §785.47 Where Records Show Insubstantial or Insignificant Periods Of Time*

*In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)) This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. See Glenn L. Nebraska Co. v. Culkin, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is 'not a trivial matter to a workingman,' and was not de minimis; Addison v. Huron Stevedoring Corp., 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." Hawkins v. E. I. du Pont de Nemours & Co., 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not de minimis."*

**FLSA Hours Worked – Travel Time**

**§785.33 General.**

The principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved. The subject is discussed in §§785.35 to 785.41, which is preceded by a brief discussion in §785.34 of the Portal-to-Portal Act as it applies to travel time.

*"§785.38 Travel that is all in the Day's Work*

*Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to*

*report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked. (Walling v. Mid-Continent Pipe Line Co., 143 F. 2d 308 (C. A. 10, 1944))."*

A copy of <u>Title 29 Regulations Part 785: Hours Worked</u> is attached to this report as Appendix 14.

**The Darden Survey**

A survey was developed, hereinafter referred to as the "Darden Survey," and is being used to obtain work-related data from named Plaintiffs and Opt-ins. In part, the Darden Survey was designed to determine whether or not the named Plaintiffs and Opt-ins perform general preparation and maintenance-related work in relation to their assigned duties as established by the Wage and Hour Division for "tipped employees" and to identify compensable time worked by named Plaintiffs and Opt-ins that should be paid at the applicable FLSA minimum wage hourly rate.

The Darden Survey includes three primary sections under which data is obtained from named Plaintiffs and Opt-ins. The three sections are titled: <u>Average Pre-Shift Off-The-Clock Hours</u>; <u>Average On-The-Clock Hours</u>; and <u>Average Post-Shift Off-The-Clock Hours.</u>

The <u>Pre-Shift Off-The-Clock Hours</u> section includes questions about the average amount of time from arriving at the restaurant to first clock in for a shift. The <u>On-The-Clock Hours</u> section includes questions about the average amount of on-the clock time from first clock in to last clock out for shift (from Darden records). The <u>Post-Shift Off-The-Clock Hours</u> section includes questions about the average amount of time from clocking out at the restaurant to leaving the restaurant. A copy of the Darden Server Survey and a copy of the Darden Bartender Survey are attached to this report as Appendix 15.

**Darden – Prior U.S. Department of Labor, Wage and Hour Division FLSA Investigations**

A total of six prior U.S. Department of Labor (DOL), Wage and Hour Division (WHD) investigations of restaurants within the Darden enterprise have been documented thus far. Some of the investigations resulted in a finding of violations of the FLSA involving tipped employee personnel. Copies of the documentation associated with these investigations are attached to this report as Appendix 16.

.

**Darden - Internal FLSA Investigations**

Darden conducted its own internal investigations of the FLSA compliance Issues within the enterprise after being advised internally of possible FLSA violations involving tipped employees. Fourteen internal investigations with varying degrees of FLSA compliance issues are detailed in the documentation reviewed. Copies of the documentation associated with Darden's internal investigations are attached to this report as Appendix 17.

No evidence has been produced for my review to date that Darden ever implemented an "exit interview" strategy with tipped employees in order to determine the status of FLSA compliance with these employees after departing from their employment at a Darden restaurant. An "exit interview" program for tipped employees would be a proactive systemic solution to mitigate past and future FLSA violations that might exist throughout its enterprise that involve tipped employees.

Darden's system of conducting an internal investigation of FLSA wage issues is only reactive, and promotes a lax approach towards FLSA compliance involving tipped employees.

**Darden - Tipped Employees Assigned Duties**

Darden prepared position descriptions and additional documentation that lists the duties assigned to various tipped personnel positions at restaurants within the Darden enterprise. This documentation is attached to report as Appendix 18.
Darden has published a number of management related reports relative to the utilization of tipped employees in the performance of general preparation and maintenance type work. Copies of these reports are attached to this report as Appendix 19.

# II. OPINIONS

**OPINION NUMBER 1**

**In my professional opinion and within a reasonable degree of professional certainty, I believe that the use of the Darden Survey is a valid means through which the activities of named Plaintiffs and Opt-ins that are at issue in this lawsuit may be evaluated to determine Darden's compliance with the applicable provisions of the FLSA and the applicable DOL guidelines and regulations.**

**Basis of Opinion Number 1:**

1-A   The US Department of Labor (DOL), Wage and Hour Division (WHD) routinely used a questionnaire to obtain wage-related data from employees to determine compliance with the FLSA. During the time I was employed by the DOL as a Compliance Specialist, the Compliance Specialists routinely used mail interview questionnaires to obtain wage-related data from employees. The data obtained from employees through the use of these questionnaires was analyzed and used by Compliance Specialists to determine an employer's compliance with the FLSA. A copy of the "Employee Mail Interview Form" questionnaire, Form WH-42, is attached to this report as Appendix 20.

The use of the Darden Survey form in the subject case is similar to and consistent with the approach taken by DOL, WHD Compliance Specialists in their use of an "Employee Mail Interview Form" questionnaire, Form WH-42, to obtain work-related information from an employee in determining compliance with the FLSA by an employer.

1-B   The US Department of Labor, Wage and Hour Division continues to use a questionnaire as a viable means to obtain wage-related data from employees to determine compliance with the FLSA. Mr. Alfred B. Robinson, Jr., who was employed at the WHD from 2002 until 2006 and served as the WHD Acting Administrator from 2004 until 2006, published a "Wage & Hour Investigations" article on June 30, 2010 in which he states in subsection C -

Employee Interviews: "In some cases, investigators will conduct employee interviews after work time by telephone or by sending an employee a questionnaire in the mail." The practice of using an Employee Mail Interview questionnaire (Form WH-42) to obtain information upon which to determine compliance with the FLSA continued to be used as a viable and effective investigative tool to assist in determining compliance with the FLSA throughout Mr. Robinson's tenure. A copy of this article is attached to this report as Appendix 021.

**1-C**   A representative of the US Department of Labor, Wage and Hour Division's Southwest Regional Office, 525 S. Griffin Street, Suite 800, Dallas, Texas 75202, (972) 850-2600 confirmed on March 25, 2014 that the "Employee Mail Interview Form" questionnaire, a WH-42 form, is currently in use for investigations conducted by Wage and Hour Division enforcement personnel.

**1-D**   The court, in *Fast v. Applebee's Intl., Inc.*, 2009 WL 2391775 (W.D. Mo. Aug. 3, 2009), found that the use of a questionnaire to obtain data from tipped employees to determine compliance with the FLSA was permitted.

The court referenced my opinion on this subject in that case as follows:

> "He also testified that other Compliance Officers used similar questionnaires to gather historical data. His testimony in this regard is supported by case law. See, e.g., Reich v. Monfort, Inc., 144 F.3d 1329 (10th Cir. 1998); Metzler v. IBP, Inc., 127 F.3d 959 (10th Cir. 1997); Brock v. J.R. Sousa & Sons, Inc., 113 F.R.D. 545 (D. Mass. 1986); Donovan v. Hudson Stations, Inc., 1983 WL 2110 (D. Kan. 1983). . . .
>
> The questionnaire used here is not particularly complicated. It asks employees to identify the work they did during a typical shift. While not all parts of the questionnaire are precise, precision is sometimes not possible in an FLSA case when there are no contemporaneous records showing what work was performed. The Court's Daubert analysis must be made in that context. Miller v. Baker Implement Co., 439 F.3d 407, 412 (8th Cir. 2006)."

A copy of this Order is attached to this report as Appendix 22.

**OPINION NUMBER 2**

In my professional opinion and within a reasonable degree of professional certainty, I believe that the categories of tasks and duties set forth in the Darden Survey form were correctly used to identify the named Plaintiffs' and Opt-ins' side work duties and other activities:

**Basis of Opinion 2:**

2-A     Please refer to section 3-A  provided in opinion number 3 that identifies the type of side work activities and also serves as a reference for this opinion.

2-B     Please refer to opinion letter FLSA-854 dated December 20, 1985  that was provided earlier in this report and serves as a reference for this opinion.

2-C     Deposition content from named Plaintiffs and Opt-ins identifies the various tasks listed in the Darden Survey. Additionally, documentation from Darden previously referenced in this report lists various duties of tipped employees and identifies similar duties contained in the Darden Survey. A copy of the Darden Survey forms that identifies the categories of sidework and the types of duties assigned to these categories is attached to this report as Appendix 15.

2-D     The court, in *Fast v. Applebee's Intl., Inc.*, 2009 WL 2391775 (W.D. Mo. Aug. 3, 2009), sustained my opinion that data fields of a Questionnaire used for servers and bartenders in that case were correctly used to identify the named Plaintiffs' and Opt-ins' general preparation and/or maintenance type duties and work-time. The court stated the following:

> *"In his Third Opinion Mr. Cutler states: In my professional opinion and within a reasonable degree of professional certainty, I believe that the following "Section" and "No" fields of the Opt-In Questionnaire were correctly used to identify the named Plaintiffs and Opt-ins' general preparation and/or maintenance type duties and work-time[.] . . .*
>
> *Having worked for the DOL for many years, it would not be surprising that he [Mr. Cutler] was called upon to define how specific tasks should be categorized based on a general statement in a regulation or handbook. In other words, when a regulation specifically*

*identifies some tasks that are labeled general preparation (in this case "cleaning and setting tables, making coffee, and occasionally washing dishes or glasses"), how does a DOL Compliance Officer determine what other tasks should be similarly categorized.*

*The Court assumes a DOL Compliance Officer would have to make these kinds of interpretations on a regular basis. Laws and regulations are normative principles that have to be applied to diverse factual contexts. Rarely does the law or regulation identify on its face every factual context to which it will apply. Given that Mr. Cutler has extensive compliance experience, it is more likely than not that he has made similar deductions. The fact that he has never had to classify these particular tasks does not mean his opinion is unreliable or unhelpful to the jury."*

## OPINION NUMBER 3

**In my professional opinion and within a reasonable degree of professional certainty, I believe that maintenance and general preparatory work, or opening or closing work are not duties directed towards producing tips.**

**Basis of Opinion 3:**

3-A.   Tipped employees who are engaged in a tipped occupation performing non-tipped producing duties are entitled to a non-tipped credited hourly rate of pay (i.e. minimum wage) if they are either "routinely assigned" as "specific employees" these types of duties or spend in excess of 20% of their total work time performing non-tipped producing duties. The following excerpt from the Wage and Hour Division's FOH states that general preparation and maintenance work are not duties in and of themselves directed toward producing tips:

"30d00    General.

(e)  Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to

<u>maintenance</u>, <u>or</u> that tipped employees spend a <u>substantial</u> amount of time <u>(in excess of 20 percent) performing general preparation work or maintenance</u>, <u>no tip credit may be taken</u> for the time spent in such duties."

Allegedly, Darden routinely assigned specific tipped employees to perform maintenance and general preparatory type work. This work can occur before a scheduled shift when no "guests" are at the restaurant, during the scheduled shift when "guests" are at the restaurant, and during a time after the serving of "guests" has ceased, but before the restaurant is physically secured for the evening.

The word "<u>Incidental</u>," as used in the FOH 30d00(e) reference quoted above, is defined by Merriam-Webster's Unabridged Online Dictionary as: "being likely to ensue as a chance or minor consequence;" "<u>occurring merely by chance</u> or <u>without intention</u> or calculation."[4]

**3-B.**   Based upon my professional experience and training with the U.S. Department of Labor, Wage and Hour Division, tip producing duties include direct interaction with the customer such as greeting, taking orders, delivering orders, refilling drinks and bread, pre-bussing tables, and processing guest checks and payments. These duties would not be included in the calculation of the 20% rule as they are part of the server's or bartender's direct interaction with the guest.

**3-C**   The court in *Fast v. Applebee's Intl., Inc.*, 2009 WL 2391775 (W.D. Mo. Aug. 3, 2009), upheld my opinion that general preparation and maintenance work is not a tip-producing activity:

> *"In his Second Opinion Mr. Cutler states: In my professional opinion and within a reasonable degree of professional certainty, I believe that general preparation and maintenance work is not a tip-producing activity.*
>
> *. . . If this is a fact question, then Mr. Cutler is not giving a legal opinion when he identifies what is tip producing activity. As to his credentials, he has worked for many years interpreting and enforcing the FLSA. He has handled cases which involved the tip credit, although never one that required him to interpret or apply the twenty percent rule which is found in the DOL Guidebook. While this is a close question, the Court finds that Mr. Cutler is qualified by his experience to give this opinion. Mr. Cutler's experience with the DOL Guidebook and regulations enables him to explain to the jury how the DOL's regulations*

---

[4] *http://www.merriam-webster.com/dictionary/incidental*

*and Guidebook are used by Compliance Officers and what should be considered to determine whether something is a tip producing activity. It will be for the jury to determine whether his opinion about tip producing activity is consistent with the DOL's interpretation and whether his opinion makes common sense.*

*Thus, even if this involves a legal issue, the Court finds Mr. Cutler's Opinion 2 admissible."*

## OPINION NUMBER 4

**In my professional opinion and within a reasonable degree of professional certainty, I believe that named Plaintiffs and Opt-ins bartender and server tipped personnel performing related and incidental general preparation and/or maintenance type sidework activities in excess of 20% of their work time are to be paid at least the FLSA minimum hourly wage rate for the time spent performing those activities during the relevant case period.[5]**

**Basis of Opinion 4:**

**4-A**   Please refer to section 3-A provided in opinion number 3 that identifies general preparation and/or maintenance type activities, references the 20% threshold rule, and also serves as a reference for this opinion.

**4-B**   Please refer to opinion letter FLSA-854 dated December 20, 1985, that was provided earlier in this report and also serves as a reference for this opinion as well as the DOL Field Operations Handbook Sec 30d00 and DOL Fact Sheet #15 referenced earlier in this report.

**4-C**   The Court, in *Fast v. Applebee's Intl., Inc.,* 502 F. Supp. 2d 1996 (W.D. Mo. 2007), stated the following in support of the above opinion:

> *"Thus, FLSA regulations and the Handbook indicate that a tipped employee's duties must fall into one of three categories. The first category includes all tip producing duties. An*

---

[5] *Note that the "related and incidental general preparation and/or maintenance type sidework" discussed here are to be distinguished from the "unrelated duties" discussed in Opinion No. 8. Should the Court determine that one or more of the activities set forth in Opinion No. 8 are not "unrelated duties," or are related to tip producing duties, then such tasks would count towards the 20% rule.*

*employer may take the tip credit for any employee time that falls within the first category. If an employee's duty is not tip producing, then it must be incidental to one of the employee's tip producing duties (the second category), or it must be a duty that is unrelated to any of the employee's tip producing duties (the third category). If the duty falls within the second category, then the employer may take the tip credit for the time the employee spent on incidental duties so long as the incidental duties do not exceed 20 percent of the employee's overall duties. If the employee's second category duties exceed 20 percent of the employee's overall duties, then the employer may not take the tip credit for any of the employee's time spent on second category duties. Finally, an employer may not take the tip credit for any employee time that falls within the third category because third category duties are treated as separate and distinct occupations."*

## 4-D    Assigned Duties Documentation

Position descriptions and supplemental documentation published by Darden that details the various duties assigned to tipped personnel employed by Darden are attached to this report as Appendix 18.

## 4-E    Darden Labor Standards

Copies of the documentation published by Darden that illustrate Darden's utilization of tipped employees in the performance of general preparation and maintenance type work are attached to this report as Appendix 19.

## OPINION NUMBER 5

In my professional opinion and within a reasonable degree of professional certainty, I believe that Darden failed to maintain accurate time records for servers and bartenders from September 6, 2009 through September 6, 2012 of the side work or duties that do not directly produce tips.

**Basis of Opinion 5:**

5-A    Darden's corporate representatives stated in their depositions that Darden does not have or employ software that tracks the sidework that servers and bartenders perform during the day.[6]

Red Lobster and Olive Garden do not have a tracking system to measure sidework done by individual servers or bartenders. See deposition of Chris Iaciofoli ("Iaciofoli Depo") at 50; and deposition of Dan Kiernan ("Kiernan Depo") at 45. Neither does Longhorn, other than observations. See deposition of Paul Livrieri ("Livrieri Depo") at 50-51. These depositions may be found in Appendix 5.

5-B    Named Plaintiffs and Opt-ins have stated in their depositions that Darden routinely failed to record and pay for all compensable hours worked.

For example, Stephen Doneth who worked as a server for Olive Garden and Seasons 52 stated the following in his deposition:

```
"16 Q. With regard to the coming in early piece, you
17 never notified management about that at Olive Garden or
18 Seasons 52 or -- being off the clock before your shift
19 began?
20 A. No. It was just expected. They said be
21 here. You were told to be here 15 minutes before your
22 shift start, and you show up 15 minutes before your
23 shift start. [26:14-19]


16 A. Yeah. I mean, they would -- if something
17 needed to be done like clean the bathroom, wipe down
18 woodwork, stuff like that that wasn't on a list, they
19 would have you do that." [53:13-19]
```

A list of named Plaintiffs and Opt-in depositions are attached to this report as Appendix 5.

---

[6] *Please Note: As of the writing of this report I only had available to me the "rough transcripts" of the corporate representatives, and the deposition of the Bahama Breeze corporate representative had not yet been taken.*

**5-C    DOL Investigations**

Prior investigations of Darden restaurants by the U.S. Department of Labor, Wage and Hour Division, resulted in some charges of FLSA wage violations because Darden failed to maintain an accurate record of hours worked for tipped personnel. Copies of the investigation reports and related documentation are provided as an attachment to this report as Appendix 16.

**5-D**    The court in *Fast v. Applebee's Intl., Inc.*, 2009 WL 2391775 (W.D. Mo. Aug. 3, 2009) ruled that I was permitted to render an opinion, in part, that Applebee's failed to maintain an accurate record of hours worked to determine the extent of the amount of general preparation and maintenance type work performed by named Plaintiffs and Opt-ins classified as tipped employees, upon which Applebee's ability to take a tip credit for hours worked rested. As the court stated:

> *"The Court will permit Mr. Cutler to testify about the record keeping requirements of the FLSA and explain the practical problems that occur when no records are maintained. The Court will also permit him to testify that Applebee's did not maintain a record of hours worked which could now be used to determine the extent of the amount of general preparation and maintenance work performed by named Plaintiffs and Opt-ins."*

**5-E**    The regulatory provisions of <u>Title 29, Part 785 of the Code of Federal Regulations, Interpretative Bulletin on Hours Worked</u> that address "off the clock work" and unrecorded compensable time alleged by named Plaintiffs and Opt-ins are stated earlier in this report.

**OPINION NUMBER 6**

In my professional opinion and within a reasonable degree of professional certainty, I believe that the time the bartenders and servers spent before the restaurants opened or after the restaurants closed should be paid at the applicable regulatory minimum wage rate.

**Basis of Opinion 6:**

**6-A.**   The following excerpt from the Wage and Hour Division's FOH references that general preparation and maintenance work is not a tip-producing activity:

> *"30d00     General.*
>
> *(f) Reg 531.56(e)... [W]here the facts indicate that <u>specific employees are routinely assigned to maintenance</u>, or that tipped employees spend a <u>substantial</u> amount of time <u>(in excess of 20 percent)</u> <u>performing general preparation work or maintenance</u>, <u>no tip credit may be taken</u> for the time spent in such duties."*

**6-B**   Specific tipped employees were routinely assigned to maintenance preparatory work during the workday when no customers were present at the restaurant to be served and no opportunity existed for the tipped employee to engage in performing tip producing duties for a customer.

Named Plaintiffs and Opt-ins stated in their depositions that Darden routinely assigned maintenance/preparatory work during the workday when no customers were present at the restaurant to be served and no opportunity existed for the tipped employee to engage in performing tip producing duties for a customer.

For example, Stephen Doneth stated the following in his deposition regarding closing related work:

```
"7 Q. So you would get started?
 8 A. Yes and no because a lot of it had to be done
 9 at the end of the night like break down the tea
10 station, wash all the bins. The coffee station, the
11 same thing, it all had to be broken down, run through
12 dish, dried, it all had to be completely dry.
13 You can't do that in the middle if you're on
14 at 5:00 and your closing side station -- side work is
15 break down the coffee, you can't do that at 5:30.
...
Page 127
13 Q. Now, when you would work a dinner but weren't
14 the closer, what sort of closing side work tasks did
15 you perform at the Olive Garden?
16 A. Okay. Well, it depended on which section you
17 were in. Like I said, those were on the list.
18 Depending on which section, it would run anywhere from
19 breaking down the salad bin, cleaning the bread warmer,
```

```
20 soup warmer break down and clean, restock all the
21 plates, wipe down all the stainless steel, sweep out
22 from underneath the stainless steel, break down the tea
23 station, wash, you know, wash all the station, dry it
24 all.
25 We had to empty the dessert freezer, clean it
Page 128
1 all out and then restock it full, had to clean the ice
2 cream station, restock bowls.
3 The coffee station was next, so there would
4 be coffee. You would have to break down and washout
5 all the coffee, dry all the coffee, restock all the
6 coffee packets, if you will.
7 Soda station, you would have to totally break
8 down the soda station, wipe it all out, clean all the
9 nozzles, burn the ice, wipe out the ice bin.
10 Break down the salad station. Did I mention
11 that? We had to break down the cooler which held the
12 bins of salad on the wall, defrost that, wipe it all
13 out, wipe out from underneath the Cold Well, take all
14 the Cold Well apart, put that all back in the walk-in."
   . . .
```

6-E   Darden's corporate officers have acknowledged that Darden has failed to pay the full non-tipped hourly rate to named Plaintiffs and Opt-ins for the type of routinely assigned and particularly assigned maintenance/preparatory work that named Plaintiffs and Opt-ins routinely performed. A list of the Darden representatives and their depositions are attached to this report as Appendix 5.

**OPINION NUMBER 7**

In my professional opinion and within a reasonable degree of professional certainty, I believe that Darden's recordkeeping system that systematically changes an employee's hourly rate to a sub-minimum hourly wage rate at a specific time of day without confirming that the work actually being performed is being paid in compliance with the correct and applicable regulatory hourly wage rate is a flawed recordkeeping system that failed to accurately record non-tipped hours worked and did not comply with the applicable recordkeeping and minimum wage provisions of the Department of Labor's regulations and/or the FLSA.

**Basis of Opinion 7:**

**7-A**   The clock in/clock out reports produced by Darden reflect that the timekeeping system automatically changes the job code and, therefore, the applicable wage rate, of certain employees who begin their shifts prior to the restaurant opening and who are being paid minimum wage for that time, at least at some of the brands at issue in this case.  For example, I understand that the job code "server setup" is  a code Darden uses to pay its servers minimum wage prior to the restaurant opening. Regardless of when the server begins his or her server tasks, however, the job code switches at the time the restaurant opens (often at 11:00 a.m.), without accounting for whether the server has finished his or her set up work. Copies of certain clock in/clock out reports produced by Darden are attached to this report as Appendix 24.

**7-B**   Both Red Lobster's and Olive Garden's corporate representatives admitted that the computer automatically switches servers and/or bartenders from a minimum wage for performing opening sidework and opening the restaurant to a tipped wage at 11:00 a.m., Kiernan Depo (Olive Garden Director of Operations) at 26. Yet Red Lobster's representative stated that if the server had not completed his or her opening duties, it was appropriate to pay that server the tipped wage because it was "far less than 20 percent of their responsibilities" and any remaining opening sidework "would be done to service the guest directly." Iaciofoli Depo at 20. Likewise, the Director of Operations for Seasons 52, Mark Norberg, testified that opening duties are paid at minimum wage until the restaurant opens for guests.  Deposition of Mark Norberg ("Norberg Depo") at 13-14. These opening duties included tasks such as stocking the side station, stocking liquor behind the bar or setting up certain areas, Norberg Depo at 14. The Seasons 52 representative confirmed that the "key" to the determination was whether a customer was in the building, not the task being done, Norberg Depo at 14. Once guests arrived, "everything is dedicated to their experience," so all of the activities a server or bartender performs is related to the tipped employee's tip producing activities,  Norberg Depo at 14.

However, since this pre-opening work is routinely assigned to specific tipped employees, and therefore must be paid at minimum wage (see Opinion #6), the fact that the clock strikes 11:00 a.m. does not instantly transform this minimum wage work into tip-credit work.

**7-C**   Named Plaintiffs and Opt-ins have stated in their depositions that they regularly performed the types of work identified under Opinion 8 and were not paid the full non-tipped hourly rate to which they were entitled. A list of the named Plaintiffs and Opt-ins and their depositions are attached to this report as Appendix 5.

For example: Lisa Long, who worked at Olive Garden and Bahama Breeze (and previously at Red Lobster), stated the following in her deposition:

```
Page 218
25  Now, when you came in at right around
Page 219
1   10:00, be it 9:55 or 10:15, you were being paid -- how
2   were you being paid, what rate were you being paid when
3   you came in to open?
4       A.    Regular minimum wage.
5       Q.    Okay.  And how long would that last?
6       A.    Until 11:00.
7       Q.    Then would you repunch in or the system
8             automatically converts you over?
9       A.    The system automatically converted me over
```

**OPINION NUMBER 8**

In my professional opinion and within a reasonable degree of professional certainty, I believe that certain specific activities performed by Darden tipped employees are activities that are not related to tip producing activities; not incidental to the tipped employees' regular duties; not related to "sidework;" and are not directed to specific customers. Servers and bartenders performing these types of duties should be paid the applicable regulatory minimum wage rate for performing this type of work, regardless of the 20% rule for tipped employees.

A list of these types of duties can include, but is not limited to:

1. Food preparation including cutting or chopping salad;
2. Setup or cleaning the Expo line;
3. Preparation or making of salads;
4. Baking bread;
5. Making desserts;
6. Rolling and polishing silverware;

7.   Carrying garbage, picking up trash;

8.   Restrooms – checking, cleaning, maintaining, stocking;

9.   Running errands; obtaining produce or products for the restaurant at a retail store or at another Darden restaurant;

10.   Security presence at closing;

11.   Detailed cleaning, weekly cleaning, popping the booth. cleaning coffeemakers;

12.   Cleaning cabinets, cleaning "his" or "her" storage containers, oil and vinegar sets;

13.   Cleaning caddies, shutters, blinds;

14.   Cleaning  woodwork, baseboards, paneling, shades, walls;

15.   Dusting picture frames, cleaning sugar caddies, emptying salt and pepper sets and running them through the dishwasher;

16.   Dishwasher tray checks, vacuuming, mopping, "bug night," washing dishes.

**Basis of Opinion 8:**

8-A   DOL's Field Operations Handbook makes it clear that employer (Darden) can take a tip credit only for hours spent in duties related to a "tipped occupation". Duties unrelated to the tipped occupation must be paid at minimum wage.

By way of example, Longhorn's representative testified that rolling silverware should never be paid at minimum wage, because it "always has an impact on the guests." Livrieri Depo at 49. Red Lobster's representative would not agree that there were <u>any tasks</u> that could be requested of a bartender or a server that should be paid at minimum wage.  Iaciofoli Depo at 10. But that is not what DOL's regulations, guidelines, or the applicable case law provide. For example, a server who cleans the restroom when guests are present is performing duties unrelated to a tipped occupation, and must be paid at minimum wage, regardless of whether guests are in the restaurant. *Driver v. AppleIllinois,* 739 F.3d 1073 (7th Cir. 2014). The same is true for rolling silverware *Driver v. AppleIllinois,* 890 F. Supp.2d 1008, 1033 n. 15 (N.D. Ill. 2012).

Red Lobster's representative testified that duties such as emptying trash, cleaning the blinds, cleaning the shutters, cleaning the ceiling fans and cleaning the floor drains would not be entitled to be paid minimum wage because these activities "directly impacts the tip

that those team members make." Iaciofoli Depo at 11. In fact, Longhorn's representative could not identify a single task that would constitute "unrelated sidework." Livrieri Depo at 49. Seasons 52's corporate representative likewise testified that if a server wiped bathroom counters or refilled the hand towels in the bathroom or replaced the toilet paper in a stall, that would be direct sidework which would "directly impact" the guest experience, and even the 20% rule would not apply, let alone minimum wage. Norberg Depo at 9-10. My understanding is that the courts have determined that bathroom duties are to be paid at minimum wage. *Driver v. AppleIllinois,* 739 F.3d 1073 (7th Cir. 2014).

However, notwithstanding the views expressed by Darden's representatives, there are certain duties, no matter when they are performed, that are unrelated to tip producing work and should be paid at minimum wage.  In fact, this point is demonstrated in part by the manner in which some of the brands pay certain people for certain tasks. For example, Olive Garden employs salad alley people who are paid more than minimum wage to make salads. However, those people are not on duty when the volume in a given restaurant is slower. When that occurs, the servers -- who are being paid tipped wage -- prepare the salads, Kiernan Depo at 38-39. While Olive Garden employs production workers or line cooks who usually prepare the bread and who are paid at least minimum wage, Olive Garden's representative insisted that in the event a tipped wage server makes bread he should not receive minimum wage, because that would be "in direct service of the guest," Kiernan Depo at 43. However, food preparation is not related to any tip producing duties, and ought to be paid at minimum wage. DOL Opinion Letter FLSA-854 (1985) (no tip credit may be taken for salad preparation activities), cited in this Report; *Driver v. AppleIllinois,* 739 F.3d 1073, 1075 (7th Cir. 2014); (food preparation is unrelated to tipped duties and should be paid at minimum wage); *Driver v. AppleIllinois,* 890 F. Supp.2d 1008, 1031 (food preparation involve duties unrelated to tipped occupation and should be paid at minimum wage).

**8-B**   Please refer to the opinion letter dated December 20, 1985, quoted on page 15 of this report, in which the WHD opines that tipped employees who are required to perform non-tipped duties primarily assigned to a non-tipped occupation/position is working "dual jobs" and must  be paid a non-tipped wage when working in a non-tipped occupation capacity.

A number of Darden's tipped employees have acknowledged they were assigned to and required to perform the types of duties that had also been assigned to employees at the restaurant who worked in a non-tipped occupation, such as bussers or food preparers.

## 8-C  Darden Employee Complaints

Darden was provided internally with reports that alleged that tipped employees were being utilized in non-tipped occupations in violation of applicable FLSA regulations. Copies of the documentation relative to these reports are attached to this report as Appendix 17.

## OPINION NUMBER 9

In my professional opinion and within a reasonable degree of professional certainty, I believe that Darden has not applied the Department of Labor's "20% Rule" for tipped employees as the 20% Rule requires.

## Basis of Opinion 9:

9-A    DOL's regulations and interpretations (along with applicable case law) recognize, at least implicitly, that there are certain duties a server or bartender performs that are, in themselves, directed towards producing tips.  Examples of such activities are the server's or bartender's direct interaction with guests, including greeting, taking and delivering orders, refilling drinks and bread, pre-bussing tables, and processing guests checks and payments.  These activities do not count towards the 20% rule threshold set forth in DOL's guideline.  DOL's *Field Operations Handbook,* Section 30d00.

DOL's regulations and interpretations (along with applicable case law) also permit an employer to take a tip credit for time a server or bartender spends in duties *related* to the tipped occupation, even though such duties are not by themselves directed towards producing tips, such as maintenance and preparatory or closing activities.  DOL Reg. 531.56(e); DOL *Field Operations Handbook* Section 30d00. The employer can take the tip credit, as long as the duties related to sidework do not exceed 20% of the tipped employee's time. *DOL Field Operations Handbook* Section 30d00; DOL Reg. 531.56(e). As

noted earlier, these "duties related to the tipped occupation" include activities such as cleaning and setting tables, making coffee, and occasionally washing dishes or glasses.

During their depositions, Darden's corporate representatives defined nearly every activity a server or bartender does as being directed towards producing tips (as opposed to "related to a tipped occupation"), and therefore would not count any of those activities towards the 20% threshold:

The representative from Red Lobster testified that "any sidework assigned to a server or bartender would be tip producing," Iaciofoli Depo at 7, because it all "impact[s]the guest experience, and therefore the 20% rule would not apply." Iaciofoli Depo at 50-51; 25. Seasons 52's corporate representative likewise testified that "anything" a server or bartender does in the course of service is directly or indirectly related to generating tips. Norberg Depo at 8.  Similarly, the Sr. Vice President of Operations for Longhorn restaurants stated that "the majority of all of the sidework that we ask any of our bartenders or servers to do is done in direct response to generating tips for them." Livrieri Depo at 36. It was Red Lobster's view that "general maintenance of the [Server's/Bartender's] area directly impacts the tip that they receive from the guest," Iaciofoli Depo. at 39, and therefore would not count, in Darden's view, toward the 20% threshold. But the DOL has specifically stated that maintenance activities are not by themselves directed to producing tips and therefore do count towards the 20% rule threshold.

Like the other corporate representatives, Longhorn's representative testified that work that is both directly and indirectly related to generating tips would not be part of the 20% threshold. Livrieri Depo at 37:

```
Q: If the sidework is related to tip-producing work, then the 20
percent rule doesn't apply.  It only applies to that work which
is unrelated to tip-producing work is that your understanding of
the definition?
A: It is and I would say unrelated either directly or indirectly
related
Q. So if it's directly related to tip-producing work or
indirectly related to tip-producing work, it is not subject to
the 20 percent rule?
A. That's my understanding, yes.
```

See also Livrieri Depo at 45 ("Q: [A]s long as it's related to tip-producing activity it didn't count as the 20 percent? A. Correct"); 64 (prepping the ramekins with butter is directly related to producing tips and "does not count as part of the 20 percent"). Longhorn's representative also testified that Longhorn makes its servers and bartenders arrive 15-30 minutes before the restaurant opens for business but pays them at tipped wage. He claimed that the opening duties the bartenders perform during that time, such as rolling silverware and cutting fruit – when no guests are in the restaurant – is "tip producing." Livrieri Depo at 44. He likewise testified that the opening server's duties before the customers arrive from "brewing tea, filling water pitchers to cutting lemons all of that is directly related" and "tip producing." Livrieri Depo at 53.

Additionally, Red Lobster's representative testified that "[b]ecause our expectation for our service team members whether a server or a bartender is that when they're working that they are focused on delighting the guest and their role is developed to focus on delighting the guest. So there aren't additional tasks that would typically be assigned to a server or a bartender that would not be tip-producing." Iaciofoli Depo at 49.

In short, by defining nearly every activity a sever or bartender does as tip producing, Darden attempts to end-run the 20% rule.  If Darden's definition was the standard, the 20% rule would be meaningless, and it seems likely that no server or bartender would ever exceed the threshold.


**Submission of this Report**

I understand that discovery is continuing in this matter, and may continue through the time of trial. Therefore, my review of such discovery may also continue through the time of trial. As a result, I may augment, supplement, and/or modify this report and/or provide an addendum to this report, once I am provided with additional documentation or testimony which could have a material impact upon my findings.

**EXHIBIT 83**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

NICOLE ALEQUIN, et al,                    Case No. 0:12-CV-61742- DIMITROULEAS/SNOW

     Plaintiffs,

     v.

DARDEN RESTAURANTS, INC., GMRI, INC.,
RARE HOSPITALITY INTERNATIONAL, INC.,
RARE HOSPITALITY MANAGEMENT, INC.,
N and D RESTAURANTS, INC., DARDEN SW LLC,
and FLORIDA SE, INC.,

     Defendants.

_____/

## DECLARATION OF WILLIAM J. CUTER

William J. Cutler states the following:

    1.    I am a resident of Pasco County, Florida, and am over the age of eighteen, of sound mind, and otherwise fully competent to testify as to the matters set forth herein.

    2.    I have been retained by the Plaintiffs' in this matter as a wage and hour expert, and a copy of my Curriculum Vitae (CV) is attached to this Declaration as **Exhibit 1.**   I previously submitted an expert report in this case.

    3.    I was employed as a Compliance Specialist with the U.S. Department of Labor's ("DOL") Wage and Hour Division ("WHD") for twenty four (24) years and I keep up to date with the various changes in DOL guidelines and regulations and the applicable case law interpreting and applying the DOL's guidelines and regulations.

    4.    As a compliance specialist I routinely and independently conducted investigations of various types of business enterprises to determine compliance with the regulations of the Fair Labor Standards Act ("FLSA") and other Federal labor related regulations enforced by the U.S.

1

Department of Labor's Wage and Hour Division.

5.      In my experience, and pursuant to my understanding of the relevant DOL regulations and opinion letters, as well as the applicable case law, the DOL allots the tasks of tipped employees into <u>three categories</u>: those that are directly tip producing; those that are related to tip-producing activities; and those that are unrelated to tip producing activities. The basis for this understanding is based on the following DOL sources: the DOL's Field Operations Handbook ("FOH")(citing to 29 C.F.R. § 531.56(e))(excerpts attached hereto as **Exhibit 2**), the DOL's Wage and Hour Division's "Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act" (attached hereto as **Exhibit 3**), and the DOL's December 20, 1985, Opinion Letter FLSA-854 (attached hereto as **Exhibit 4**).

6.      Specifically, the FOH, section 30d00(e), states that "Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, ... provided such duties are incidental to the regular duties of the server." The DOL's Wage and Hour Division published "Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act" that states that "[t]he FLSA permits an employer to take the tip credit for some time that the tipped employee spends in duties related to the tipped occupation, even though such duties are not themselves directed towards producing tips. ... However, where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing related duties, no tip credit may be taken for the time spent in such duties." *See* http://www.dol.gov/whd/regs/compliance/whdfs15.pdf (revised July 2013). Further, the DOL's December 20, 1985, Opinion Letter FLSA-854 states, as "[a]lso explained in section 531.56(e), the tip credit may be taken for time spent in duties related to the tipped occupation even though such duties need not by themselves be directed towards producing tips."

7.     These interpretation by the DOL have been supported by the judiciary in cases such as *Driver v. Appleillinois, LLC*, 739 F.3d 1073 (7th Cir. 2014), which have similarly interpreted the DOL regulations, opinions and rules to mean that: "the Department of Labor, interpreting section 203(m), has distinguished between non-tipped work that is, and is not, "related" to tipped work, and has decided that as long as the tipped employee spends no more than 20 percent of his workday doing non-tipped work related to his tipped work (such as a waiter's setting or clearing a table that he waits on), the employer doesn't have to pay the full minimum wage (that is, the minimum wage without the tip credit) for the time the employee spends doing that work. 29 C.F.R. § 531.56(e); U.S. Department of Labor, *Field Operations Handbook* § 30d00(e)(June 30, 2000), www.dol.gov/whd/FOH/FOH_Ch30.pdf (visited Jan. 7, 2014); *also see Fast v. Applebee's International, Inc*, 638 F.3d 872 (8th Cir. 2011)." *Id.* at 1075.

8.     It is my experience and understanding that the authorities that courts primarily rely on when interpreting the FLSA, including interpreting what a "tip producing," "related," "or unrelated" activity may be, are: the FLSA Statutes and Code of Federal Regulations themselves; U.S. Department of Labor, Wage and Hour Division Interpretative Bulletins; the U.S. Department of Labor, Wage and Hour Division's Field Operations Handbook (FOH); the U.S. Department of Labor, Wage and Hour Division Opinion Letters; and FLSA-related judicial decisions. As the Wage and Hour Division itself has stated:

> Interpretative bulletins are published by the U.S. Department of Labor, Wage and Hour Division, to assist in interpreting the various provisions of the Fair Labor Standards Act. The interpretations set forth within an interpretative bulletin are intended to indicate the construction of the law which the Wage and Hour Division's Administrator believes to be correct and which will guide him in the performance of his administrative duties under the Fair Labor Standards Act, unless and until he is directed otherwise by authoritative rulings of the courts or concludes, upon re-examination of an interpretation, that it is incorrect. As the Supreme Court has pointed out, such interpretations provide a practical guide to employers and employees as to how the office representing the public interest in

3

enforcement of the law will seek to apply it. ... The correctness of an interpretation of the Fair Labor Standards Act, can be determined finally and only by the courts.

*See* Wage and Hour Division publication: <u>As to the Effect of the Portal-To-Portal Act of 1947 on the Fair Labor Standards Act of 1938</u>, General, § 790.1, Introductory Statement, (c).

9.      The Department of Labor's Wage and Hour Division publishes the FOH to be used by the Wage and Hour Divisions' Compliance Officers/Specialists for guidance when conducting FLSA-related investigations. The Wage and Hour Division uses the contents of the FOH as an authoritative reference when preparing its opinion letters that contain official (DOL) determinations of applicable provisions of the FLSA. Courts also use the FOH as an authoritative reference in their decisions involving the FLSA. The DOL Wage and Hour Division also periodically issues "Opinion Letters" that provide FLSA-related guidance to employers. Opinion Letters contain the DOL's official interpretation of the FLSA statutes, and are generally given deference by the courts. Finally, courts themselves have issued opinions that relate directly to FLSA regulations and interpretations, including the breadth of definitions such as "tip producing," "related" and "unrelated" activities," and these decisions are often used as guidance by other courts. For an example of how the various DOL regulations and opinions are utilized by the courts, the court in *Fast v. Applebee's, Inc., Fast v. Applebee's Int'l*, 2010 WL 816639, *6, n.7 (W.D. Mo. March 4, 2010) held that, "The Department of Labor is charged with enforcing the FLSA on the ground level, and has expertise in the field that the Court lacks. In an area where reasonable minds may disagree about the meaning of the relevant statute and regulations, adopting the Department of Labor's position on this issue provides notice, continuity, and certainty throughout the industry."

10.     It has been my experience that courts rely on DOL related materials referenced

4

above when interpreting DOL regulations. and that there have been concerns voiced about relying on sources outside of this limited sphere.  For example, a memo from a member of the Interorganizational O*Net Task Force ("IOTF") whose mission is to address O*Net shortcomings has stated that "The Department of Labor now agrees the O*Net is not suitable, or appropriate, for use by professionals who need an occupation-specific database to assist in the delivery of their services. These professionals include occupational and vocational rehabilitation therapists. expert witnesses. vocational rehabilitation specialists, attorneys, LTD and industrial indemnity insurers, state vocational rehabilitation agencies, the Social Security Administration, and other government and non-government organizations who must rely on occupation-specific data for their use."  http://www.theworksuite.com/id13.html (emphasis added).  Further. the DOL noted in its *Amicus Brief* submitted in *Fast v. Applebee's*, 638 F.3d 872 (8th Cir. 2011) in support of the Plaintiffs-appellees that "Applebee's argues (br. at 15-16) that the court should use the Occupational Information Network ("O*Net") database to identify the scope of tipped occupations. such as "server" or "bartender." and to permit an employer to take a tip credit for any amount of time its tipped employees spend in those occupations. *Pursuant to this approach, all of the duties listed on O*Net within a particular occupation would be part of the tipped occupation, and thus tip-producing*: those duties not listed on O*Net would presumably be outside of the scope of the tipped occupation, and thus not tip producing.  In this scenario. there would be no need to identify "related" duties or to apply the 20 percent limitation for such work. However. it is not for Applebee's or the district court to determine whether the amount of related duties performed should be considered in the payment of tipped employees.  DOL reasonably has construed the FLSA's tip credit provision (as explained in its regulations and FOH) to permit an employer to continue paying its tipped employees a tipped wage when they are performing

duties that are related to the tipped occupation, as long as those duties do not exceed 20 percent of an employee's time. *The Department's interpretation is controlling.*" *See* DOL Amicus Brief attached hereto as **Exhibit 5**; (Emphasis added).

11.    Moreover, there is nothing in the DOL regulations or associated materials that define tip producing activities as being those activities directly related to "customer needs" or "guest experience." Instead, tasks that are associated with being tip producing are generally defined as being those that involve direct interaction with a customer. *Fast v. Applebee's, Inc.. Fast v. Applebee's Int'l.* 2010 WL 816639, *6, n.7 (W.D. Mo. March 4, 2010)("A more restrictive interpretation of "waitress" could be argued: i.e., the occupation of a waitress only involves serving food and drinks. handing out menus, taking orders, presenting a bill and setting and cleaning their individual customer's tables. However, given the difficulty of defining an occupation at its margins, the Department of Labor's more generous standard is entitled to deference. Employees may be paid the tipped wage rate for performing general preparation and maintenance duties, so long as those duties consume no more than twenty percent of the employees' working time.")

12.    In my experience, and pursuant to my understanding of the relevant DOL regulations and opinion letters, as well as the applicable case law, that the DOL has recognized that where "tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance. no tip credit may be taken for the time spent in such duties." FOH section 30d00(e). Thus, based on the applicable DOL materials referenced above. tipped employees being paid at the tip credit rate may either be engaged in activities which are directly tip producing (such as taking and placing customer orders. bringing guests their food and beverages), or which are related to non-tip producing incidental duties

6

(stocking glassware, replenishing ice bins, brewing coffee).  And if a tipped employee is "routinely assigned" as a "specific employee" to performing these types of duties (related non-tip producing activities) or they spend in excess of 20% of their total work time performing related duties, they would be entitled to a non-tip credit hourly rate of pay (i.e. minimum wage) for the entire time they spent doing such activities in any particular shift. The following excerpt from the Wage and Hour Division's Field Operation Handbook supports the basis for this opinion:

> FOH section 30d00(e) General:

(e)    Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time *(in excess of 20 percent)* performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties. (Emphasis added).

13.    Based upon my professional experience and training with the U.S. Department of Labor, tip producing duties include direct interaction with the customer such as greeting, taking orders, delivering orders, refilling drinks and bread, pre-bussing tables, and processing guest checks and payments. Most other activities a server performs in conjunction with their guest interaction is incidental, or related, to those directly tip producing duties, and so time spent on such incidental or related duties would contribute towards the 20% threshold. Unrelated activities duties are always paid at minimum wage and tasks that are unrelated do not count towards the 20% threshold.  These would be duties not meeting the criteria for tip producing duties or incidental duties that are related to a tipped occupation. FOH section 30d00(e); 29

7

C.F.R §531.56(e)("Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man"); Opinion Letter FLSA-854, December 20, 1985; Opinion Letter WH-502, March 28, 1980.

14.    The tipped credit wage in most states that permit a tip credit is $2.13 (such as it is in Florida). However, as this is a state by state determination there is variability, most notably those few states that do not permit any tip credit whatsoever, e.g. Alaska, California, Minnesota, Montana, Nevada, Oregon, and Washington. DOL Opinion Letter, December 6, 1968, attached hereto as **Exhibit 6.**

15.    In his Report, Dr. Saad defines the following activities as ***directly tip producing*** (when a customer is present in the restaurant):

- stocking food supplies, unpacking food or supplies, and moving or carrying supplies. Saad Tr. at pp. 156:13-25; 157:1-25; 158:1-3; 158:19-25; 159:1-23.
- carrying a menu to *someone else's customer. Id.* at pp. 162:18-24.
- carrying a "to go" box or bag for *someone else's customer. Id.* at pp. 163:18-25.
- carrying and/or stocking dishware and/or utensils. *Id.* at p. 164:1-18.
- setting up a beverage machine. *Id.* at p. 166:14-25; 167:1-21.
- carrying tea, coffee & ice *not at the request of a customer. Id.* at p. 167:22-25; 168:1-11.
- fix and maintaining tea, coffee, ice sodas or other machine. *Id.* at p 168:12-17.
- bartender cleaning glasses. *Id.* at pp. 169:11-25; 170:1-11; 171:21-25; 172:1-2.

In my opinion, the categorization of these activities is irreconcilable with the guidance provided by the FLSA, the interpretation of those regulations provided by DOL Opinion Letters, the guidelines provided by the FOH, and the related case law. *See* 29 C.F.R. § 531.56(e); FOH

section 30d00(e); Opinion Letter FLSA-854, December 20, 1985; Opinion Letter WH-502, March 28, 1980 (finding that activities such as cleaning the salad bar, placing the condiment crocks in the cooler, cleaning and stocking the waitress station, cleaning and resetting the tables [including filling cheese, salt and pepper shakers] and vacuuming the dining room carpet as duties *related* to their tipped occupation)(attached hereto as **Exhibit 7** (Note: Ex 4 - Opinion Letter Dec 20 1985 also references vacuuming as a being a related activity for purposes). In *Driver*, for example, a case involving servers and bartenders who sued the Applebee's restaurant chain, the court held that "the Department of Labor ... has decided that as long as the tipped employee spends no more than 20 percent of his workday doing non-tipped work related to his tipped work (such as a waiter's setting or clearing a table *that he waits on*), the employer doesn't have to pay the full minimum wage ... (emphasis added). 739 F.3d at 1075. Thus, in my opinion, there is a clear distinction between activities performed for a table assigned to a server and activities where a server is assisting another server's table(s).

16.     Other specific examples of classifications Dr. Saad has made that I believe are contrary to existing law under the FLSA include categorizing "brewing coffee" as a directly tip-producing activity when a server or bartender has customers present, but not when they do not. Saad Tr. at p. 155:7-25; 156:1-4. This is contrary to the DOL classification of this activity, which categorically defines "brewing coffee" as *related* to a tip-producing activity at any time. *See* FOH section 30d00(e)("For example a waiter/waitress, who spends some time cleaning and setting tables, *making coffee,* and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these occupations are not tip producing")(emphasis added).

17.     Similarly, Dr. Saad defines "toasting bread" as a directly tip-producing activity,

Saad Tr. at p. 204:15-19. This is directly contrary to the DOL's regulations. 29 C.F.R. § 56(e) ("For example, a waiter or waitress who spends part of his or her time cleaning and setting tables, *toasting bread,* making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though the duties listed above are **not** tip producing.") (emphasis added). Likewise, when Dr. Saad identifies "salad preparation" as a tip producing activity, as long as a check is open, (Saad Tr. at p. 200:10-14) this appears directly contrary to the DOL's position in Opinion Letter FLSA-854, in which the Administrator of the Wage and Hour Division found that "[i]t is our opinion that *salad preparation activities* are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar." *See* Opinion Letter FLSA-854, December 20, 1985 (emphasis supplied)(Exhibit 4).

18.     Dr. Saad has also concluded that rolling silverware is a related activity to tip production. *Id.* at p. 219:10-21; *Id.* at p. 220:2-15. This once again appears contrary to the applicable case law interpreting FLSA regulations and related DOL materials. *See Driver v. AppleIllinois, LLC,* 890 F. Supp. 2d 1008, n15 (N.D. Ill. 2012)("Although it is not necessary to decide for purposes of this motion, the evidence supports the conclusion that *silverware rolling is a not a 'related' duty*). Dr. Saad defines "general types of cleaning/includes vacuuming/sweeping/mopping in customer area, server station and alley" as duties related to tip producing work. Saad Report, Exhibit 65; Saad Tr. at p. 220:16-25: 221:1-5. Once again, this is directly contrary to how the DOL and related case law have defined such activities when are no guests in the restaurant. *See* 29 C.F.R. §531.56(e); *Dole v. Bishop,* 740 F. Supp. 1221, 1228 (S.D. Miss. 1990)("[B]ecause cleaning and food preparation were not incidental to the waitresses' tipped duties, the *employees were entitled to be paid the full minimum wage for the*

*pre- and post-shift time spent on those tasks*")(emphasis added).

19.     Dr. Saad also defines the tasks of a server straightening up or doing light cleaning around the bathroom as related to a tip-producing duty.  Saad Tr. at p. 200:14-25; 200:1-14. According to the cases interpreting how best to categorize this type activity, bathroom cleaning constitutes an activity unrelated to tip-producing activity and an activity which is paid at minimum wage. *Fast v. Applebee's Int'l.* Inc., 2010 WL 816639, *6, n.7 (W.D. Mo. March 4. 2010)("There is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled *even if both the bathroom and the food promote a customer's enjoyment of the restaurant*")(emphasis added). *See* 29 C.F.R. § 531.56(e)("In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, *no tip credit can be taken* for his hours of employment in his occupation of maintenance man.")

20.     Finally. Dr. Saad defines bussing tables after the server's last customer has left as directly tip producing. even there are no customers around to leave a tip. Saad Report. Exhibit 66; Saad Tr. at p. 228:5-21. In my opinion, nothing in the DOL regulations define work done either before a restaurant opens or after a restaurant closes as "directly tip producing," and so these types of activities would constitute activities that are either related or unrelated to tip-producing activities. *See* Opinion Letter WH-502, March 28, 1980. p.1-2; *Dole.* 740 F. Supp. at 1228 ("[B]ecause cleaning and food preparation were not incidental to the waitresses' tipped duties. the *employees were entitled to be paid the full minimum wage for the pre- and post-shift time spent on those tasks*")(emphasis added).

11

16.     Pursuant to 20 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of June 2014.

_____
Signature

_____
Print Name

Kimberley L Norton

June 3, 2014

KIMBERLEY L. NORTON
MY COMMISSION # FF 030363
EXPIRES: July 4, 2017
Bonded Thru Notary Public Underwriters

**EXHIBIT 84**

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Ft. Lauderdale Division

Case No. 12-61742-CIV-ROSENBAUM/SELTZER


NICOLE ALEQUIN, et al   :

      Plaintiff,    :    Videotaped

    v.            :   Deposition of:

DARDEN RESTAURANTS,  :  WILLIAM CUTLER, JR.

INC., ET AL,.       :

      Defendant.    :


      Transcript of deposition taken

by and before CYNTHIA BAUERLE, a Certified

Shorthand Reporter, at the Tampa Airport

Marriott, 4200 George J. Bean Parkway, Tampa,

Florida 33601, on Friday, April 18, 2014,

commencing at 8:03 a.m.


Job No. CS1847376

```
 1                  THE VIDEOGRAPHER:  My name Lee
 2   Nash of Veritext.  Today's date is April 18,
 3   2014.  The time is approximately 8:03 a.m.
 4            This deposition is being held at the
 5   Tampa Airport Marriott located at 4200 George
 6   J. Bean Parkway, Tampa, Florida.
 7            The caption of this case is Mathis,
 8   plaintiff, versus Darden Restaurants,
 9   defendant.
10            The name of the witness is William
11   Cutler, Jr.
12            At this time, if counsel would please
13   introduce themselves for the record starting
14   with plaintiff's counsel.
15                  MR. LICHTER:  David Lichter.
16   One of the counsel for plaintiffs.
17                  MS. RAMSEY:  Amy Ramsey.  One of
18   the counsel for defendants.
19                  THE VIDEOGRAPHER:  Madam court
20   reporter, will you swear in the witness?
21   WILLIAM CUTLER, JR., after having been first
22   duly sworn, was examined and testified as
23   follows:
24   EXAMINATION BY MS. RAMSEY:
25            Q.    Good morning, Mr. Cutler.
```

Page 71

```
 1    the ice on a glass by glass basis.

 2         A.    Okay.

 3         Q.    There is no server station.  So

 4    the servers, if they want to serve their

 5    guests, they have to go back to the ice maker.

 6    Is that a tip producing duty if they have to

 7    go get the ice from there?

 8         A.    If we're talking about the

 9    example you gave, which would be getting ice

10    for their particular customer versus getting

11    ice and filling a bin for all of the servers

12    to be used by those other servers to, in a

13    sense, serve their customers, there's a

14    difference obviously, so in terms of the

15    example you gave, if it's just that particular

16    server going to get ice for that particular

17    customer, then that would be tip producing.

18         Q.    Okay, but does it make any sense

19    if somebody is going back there anyway that

20    they wouldn't just bring a bucket for

21    everybody?

22         A.    Well, I think we might be

23    talking about two different things.

24         Q.    Okay.

25         A.    You know, but the way I hear
```

1    what you're saying, if we're talking about a

2    duty where the individual is loading an ice

3    bin for multi-servers, let's say, then that's

4    the type of an activity that could normally be

5    performed by, say, a utility type person or

6    some type of person in the -- let's say in the

7    kitchen area where they are tasked with

8    preparing food and beverage in support type

9    activities versus the example that you gave,

10   which of course would be the serving of that

11   individual server's customer.

12          Q.      Okay.  So Darden just did away

13   with the beverage station.  No beverage

14   stations and everybody is just going to get

15   their own ice clear in the back, then it

16   wouldn't have a problem, right?  Everybody

17   would be just serving their own customers?

18                  MR. LICHTER:  Object to the

19   form.

20          A.      Well, that would fall under the

21   category of serving their customer.  Their

22   individual customer.

23          Q.      And then taking, for example

24   silverware.  So if for resetting a table for

25   your new customer that's coming, instead of

Page 73

1    having silverware pre-rolled and ready, if

2    they were to just roll it in the moment for

3    guests who are there, would that be tip

4    producing?

5            A.      That could be in a sense

6    considered to be -- you're talking about just

7    rolling up silverware in general?

8            Q.      Sure.

9            A.      And in terms of -- the reason

10   why I'm pausing in a sense is I'm recalling a

11   decision made in one of the cases Driver v.

12   Apple Illinois in which the ruling was that

13   the rolling of silverware, and I think they

14   also may have had some polishing of the

15   silverware, but the rolling of silverware that

16   was mentioned independently, that would be

17   considered an unrelated type of an activity.

18           Q.      Right.

19           A.      In and of itself.

20           Q.      In Driver weren't they talking

21   about sitting there maybe at the end of a

22   shift rolling a lot of silverware versus doing

23   it on an as-needed basis for an existing

24   customer?

25           A.      I believe that's correct.

Page 74

1         Q.     Okay.  So if I'm a server and

2    I've got a customer sitting there who wants

3    silverware, if I make a roll for them and give

4    it to them, is that tip producing?

5         A.     I would consider it tip

6    producing in the sense of serving that one

7    customer.

8         Q.     Okay.  So are you saying then

9    that in terms of complying with the 20 percent

10   rule, Darden would be better off by not doing

11   any of the stuff in advance?

12        A.     Well, if you're isolating it

13   just to two alternatives, which I guess in a

14   sense stated, that's their decision as to how

15   they want to comply with the law, but

16   nonetheless, they need to comply with the

17   regulations and in terms of how they choose to

18   do so, again, it's a management decision.

19   They have a right to implement any number of

20   administrative type of processes that would

21   produce the correct results in terms of

22   achieving compliance under the Fair Labors

23   Standards Act.

24        Q.     Okay, but we've got a

25   distinction I think I'm hearing between doing

Page 75

1   something for your own customer whose asked

2   you for something versus maybe anticipating

3   the needs of your guests and getting things

4   ready in advance, so the former you say is tip

5   producing and the latter, is that tip

6   producing or no?

7        A.     In terms of preparing for

8   advance, not for a specific customer.

9        Q.     Right.

10       A.     That would and, again, going to

11  the Driver ruling, that would be unrelated

12  activities.  That would be subject to full

13  minimum wage.  That would be versus the

14  example that you gave where an -- a server

15  rather is preparing silverware for that one

16  customer that they had.

17       Q.     Well, there are a number of

18  things that servers and any bartenders need to

19  provide for their customers.  Do you agree

20  with that?

21       A.     I'm not sure exactly what you're

22  saying, but I agree that they need to do

23  something.

24       Q.     You're in a dining experience.

25  Customers often require salt and pepper.  Do

Page 285

1          A.      I recall you showing me that.

2          Q.      So, again, I want to -- please

3    focus on my question because I'm running out

4    of time.  If you are a fact finder, DOL,

5    court, jury, whatever, and you're implying --

6    applying this FOH 30D 00E and you want to know

7    if somebody is performing duties, non-tip

8    producing duties in excess of 20 percent of

9    the time, the fact finder has to establish --

10   the fact finder has to examine each of the

11   duties individually, correct?  You have to

12   know what each of the duties performed are in

13   order to count them, right?

14         A.      Duties need to be examined, yes.

15         Q.      They need to be examined and you

16   need to determine whether they are incidental

17   to the regular duties of the server, right?

18         A.      Yes.

19         Q.      And you need to examine whether

20   specific employees are routinely assigned to

21   those duties, right, each of those duties?

22         A.      That would be one leg of what we

23   were talking about earlier.

24         Q.      Okay.  And you have to establish

25   -- you have to count how much time is spent in

Page 286

1   each of these duties, right?

2          A.     You have to count all of the

3   time that's being devoted to the work, the

4   amount of time spent in tip producing duties

5   and the amount of time spent in non-tip

6   producing duties to evaluate or apply the 20

7   Percent Rule.

8          Q.     Okay.  And to know whether you

9   are in compliance you have to do that analysis

10  for every tipped employee?

11         A.     Any tipped employee for whom the

12  20 Percent Rule is being claimed.

13         Q.     You have to do that every single

14  day to assure compliance and proper

15  recordkeeping?

16                MR. LICHTER:  Object to form.

17         A.     Needs to be some type of a

18  record or some type of way of knowing whether

19  the terms of the 20 Percent Rule would be met.

20         Q.     Okay.  Looking at opinion number

21  seven, which appears on page 34 of your

22  report.

23         A.     Okay.  Okay.

24         Q.     You write "In my professional

25  opinion and within a reasonable degree of