IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 12-61742-CIV- DIMITROULEAS/SNOW

| | |
|---|---|
| AMANDA MATHIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DARDEN RESTAURANTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' MOTION FOR ADVERSE INFERENCE AND TO DISMISS OPT-IN
PLAINTIFFS FOR FAILURE TO PARTICIPATE IN DISCOVERY AND
MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 37 and D.E. 912, Defendants move for an adverse inference and to dismiss the claims of those opt-in Plaintiffs who have failed to respond to discovery. These Plaintiffs voluntarily consented to join this lawsuit as party plaintiffs and were specifically informed that, if they opted-in, they may be required to participate in discovery. Pursuant to the Court's Discovery Plan, these Plaintiffs were among the random sample chosen to respond to Defendants' discovery requests. Nevertheless, Plaintiffs have failed to provide any discovery responses. The failure of these Plaintiffs to participate in discovery has destroyed the randomness of the discovery sample and has prejudiced Defendants by, among other things, forcing them to defend a lawsuit where the only discovery responses received are from a self-selected "coalition of the willing" whose claims are not representative of the larger class. Therefore, Defendants seek an adverse inference that the discovery responses of the Sample Discovery Plaintiffs are not representative of the larger class and have no statistical or anecdotal significance, and to dismiss the claims of all opt-in plaintiffs who have failed to cooperate in discovery in this litigation.

**I.      STATEMENT OF RELEVANT FACTS**

This is an FLSA collective action. After the Court conditionally certified the case, Plaintiffs sent notice to more than 218,000 individuals, and over 20,000 opted in. The Court-

approved notice specifically advised putative class members that if they opted in, they may be required to participate in discovery and at trial.  [D.E. 228, 224-1, p at 3].   The consent form also provided a vehicle for putative class members to provide Plaintiffs' counsel with current and correct information, including mailing address, phone number, and email address.  *Id.* at 7.

Judge Seltzer presided over discovery pursuant to the Discovery Plan and Order (the "Discovery Order").   The parties were permitted to conduct data-based discovery for a random sample of approximately 768 employees (the "Sample Data Plaintiffs") and conduct more in-depth and individualized written discovery and depositions for a randomly selected 50-person group (the "Sample Discovery Plaintiffs").  (D.E. 830 ¶7).

The Discovery Order anticipated that certain of the Sample Discovery Plaintiffs would not participate in discovery.  To promote efficiency and avoid wasting time during the discovery period, the Discovery Order required prompt selection of alternates to replace any Sample Discovery Plaintiffs who failed to appear at their deposition, timely respond to written discovery, or otherwise chose not participate in discovery.  (*Id.* ¶ 14)   To address the consequences to recalcitrant opt-ins, the Discovery Order required Plaintiffs' counsel to state the facts and circumstances regarding the opt-ins' failure to participate, after which the parties were required to confer regarding whether the stated reason constituted good cause.  (*Id.* at ¶ 13).   If the parties could not agree, the Court would determine whether good cause exists and would determine the appropriate sanctions.  (*Id.*).

Once the Discovery Order was entered, the parties' experts selected the 50 Sample Discovery Plaintiffs, and the parties began conducting discovery for these individuals.  Plaintiffs propounded their individualized discovery requests, and Defendants compiled responsive documents and data for production.  However, before propounding discovery pertaining to these 50 Sample Discovery Plaintiffs, Plaintiffs' counsel had not reached out to them to confirm their interest and/or ability to participating in discovery.   It was not until *after* Defendants had expended the resources to respond to discovery for all 50 of these individuals and began pressing for deposition dates that Plaintiffs reported the exceptionally low response rate for these opt-ins; only approximately 18 of the 50 were willing and able to participate in discovery.   (Declaration of Amy Ramsey ¶¶ 4-5, attached hereto as Exhibit A).[1]

---

[1] Some of the Sample Discovery Plaintiffs and alternates cancelled their depositions with short notice, after defense counsel had both responded to individual discovery *and* expended resources

The parties agreed to a method for selecting alternates by which Plaintiffs' expert would randomly select a new Sample Discovery Plaintiff from the same "strata" (*e.g.* position and Brand) as the deponent.  Plaintiffs cycled through this process numerous times in an attempt to secure the cooperation of the agreed upon 50 Sample Discovery Plaintiffs.  (Ramsey Decl. ¶ 6).  However, despite contacting approximately 110 opt-ins, by the end of the decertification discovery period several months later Plaintiffs were able to secure cooperation of only 48 Sample Discovery Plaintiffs.  (*Id*.)

As the Discovery Order requires, Plaintiffs' counsel provided a list of the opt-ins who had declined to participate in discovery and their stated reasons for failing to participate, if any.  However, because of the difficulty Plaintiffs' counsel had securing the cooperation of their opt-ins, Plaintiffs did not provide their list for discussion with Defendants until *after* discovery had closed.  (Ramsey Decl. ¶ 7).  Based on that list and subsequent conferences with Plaintiffs' counsel, 10 of the opt-ins did not participate in discovery due either to their own alleged medical condition or that of a family member.  (*Id*.)  Defendants accepted those reasons as good cause.  (*Id*.)  Another two of these opt-ins filed motions to withdraw.  (*Id*.)  The remaining opt-ins' reasons for not participating in discovery fall into five categories that do not constitute good cause.  The stated reasons are summarized in Exhibit B.  (*Id*.)

Defendants have conferred in good faith with Plaintiffs' counsel in an attempt to resolve this matter without the Court's intervention, but to no avail.GUMENT

Rule 37 provides district courts with wide discretion in terms of what sanctions to impose for a party's failure to comply with discovery orders.  The district court's discretion to control discovery includes the "power . . . to impose sanctions on uncooperative litigants," *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993) and to control circumstances where the party's conduct amounts to "flagrant disregard and willful disobedience" of the court's discovery orders.  *Hashemi v. Campaigner Publ'ns Inc.*, 737 F.2d 1538, 1539 (11th Cir. 1984) (internal citation omitted).  "If a party fails to obey an order to permit or provide discovery, then under Fed. R. Civ. P. 37(b)(2), the court may issue further orders to remedy the failure or may impose

---

to prepare for the depositions.  In the case of Georgianna Moyer (who "does not want to participate in discovery"), Plaintiffs' counsel did not notify the defense of the cancellation until the night before the deposition – after one of the defense team had flown from Chicago, Illinois to Sacramento, California to depose her.

sanctions, including dismissing the action or proceeding in its entirety or in part." *Todd v. Daewon America, Inc.*, 2014 U.S. Dist. LEXIS 53867 (M.D. Ala. Apr. 18, 2014) (citing *Phipps*, 8 F.3d at 790-91). Available sanctions also include an adverse inference. Fed. R. Civ. Proc. 37(b)(2)(A)(i). Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and ensure the integrity of the discovery process. *Gratton v. Great American Communications*, 178 F.3d 1373, 1347-75 (11th Cir. 1999).

### A.   An Adverse Inference Should Be Drawn From The Failure Of Dozens Of Opt-In Plaintiffs To Respond To Discovery Due To Non-Response Bias

The extraordinarily low participation rate by the opt-in Plaintiffs in meeting their discovery obligations has significantly prejudiced Defendants in that the Sample Discovery Plaintiffs no longer constitute a random sample. Indeed, because Plaintiffs' counsel had to select alternates for so many Sample Discovery Plaintiffs, Defendants were no longer receiving a truly random sample of responses. Rather, Defendants were receiving responses only from a self-selected group of opt-ins who cared enough and/or felt confident enough in the strength of their claims to respond to discovery. In other words, Defendants have not received discovery responses from a random sample of opt-ins, but rather from a "coalition of the willing" set of opt-ins whose responses are not representative of the larger group, even for the limited purpose of providing anecdotal evidence. This self-selection results in non-response bias and has destroyed the randomness of the sample discovery process that is so fundamental to Plaintiffs' premise that the discovery responses of the Sample Discovery Plaintiffs have any anecdotal value whatsoever.

The court in *Morales v. Farmland Foods, Inc.*, faced a remarkably similar factual situation involving the failure of opt-ins that were part of a sample discovery response group. 2011 U.S. Dist. LEXIS 151983 (D. Neb. Dec. 15, 2011). The *Morales* court specifically recognized the prejudice to defendants where they did not receive responses from the original random sample of opt-in plaintiffs, but rather a group of "default partisans." *Id*. at *2-6. The California Supreme Court also recently highlighted the perils of non-response and selection bias in its decision affirming the reversal of the trial court due to its flawed implementation of sampling. *Duran v. U.S. Bank National Assn.*, 325 P.3d 916, 941-43 (Cal. 2014) ("[a]ttention must be paid to possible changes that could render a previously representative sample unrepresentative. When that occurs, sampling will not accurately reflect what needs to be known

about the population.")

As evidence of direct prejudice to Defendants, Plaintiffs have now attempted to use these skewed responses to bolster the conclusions of their expert, Dr. Madansky, with respect to alleged off-the-clock work and tip credit violations. *See* D.E. 962-1 at ¶¶10-12; D.E. 965, pp. 3-4, 16-17, and 32-33]. The Court should reject this reliance on the flawed discovery responses and Dr. Madansky's attempt to extrapolate them to the larger population. Rather, the Court should draw an adverse inference regarding the composition of the Sample Discovery Plaintiffs and refuse to attribute any anecdotal (and certainly any statistical) value to their discovery responses as evidence that the opt-ins are similarly situated.[2]

### B. The Opt-Ins Who Have Failed To Respond to Discovery Should Be Dismissed

Further, the claims of the opt-in Plaintiffs who have failed to meet their discovery obligations should be dismissed. Before ordering dismissal as a sanction for a discovery violation, the court should consider the efficacy of less drastic sanctions. *Todd*, 2014 U.S. Dist. LEXIS 53867 at * 4 (internal citations omitted). However, as the Supreme Court has specifically instructed, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc*., 427 U.S. 639, 642 (1976).

The opt-ins in question are active Party Plaintiffs who affirmatively chose to pursue this lawsuit, not just passive potential Rule 23 plaintiffs. *See* 29 U.S.C. § 216(b); *Cameron-Grant v. Maxim Health Care Servs., Inc*., 347 F.3d 1240, 1249 (11th Cir. 2003) (collective action depends on the active participation of other plaintiffs). For that reason, courts routinely dismiss the claims of opt-in plaintiffs who fail to respond to discovery. *See, e.g., Todd,* 2014 U.S. Dist. LEXIS 53867 at *4-5 (holding that lesser sanctions would not be sufficient and dismissing 14 opt-ins with prejudice); *Zanes v. Flagship Resort Dev., LLC*, 2012 U.S. Dist. LEXIS 23083 (D. N.J. Jan. 30, 2012) (rejecting alternative sanction and dismissing claims of opt-ins who failed to respond to discovery); *Davis v. Westgate Planet Hollywood Las Vegas LLC*, 2010 U.S. Dist. LEXIS 126988 (D. Nev. Nov. 8, 2010) (dismissing claims of opt-ins who failed to respond to

---

[2] Defendants can further support this non-response bias with expert analysis and testimony, and requests leave to do so if the Court is so inclined.

discovery); *Scott v. Raudin McCormick, Inc.*, 2010 U.S. Dist. LEXIS 79792 (D. Kan. Aug. 6, 2010) (dismissing 706 opt-ins for discovery violations); *Brennan v. Qwest Communs. Int'l, Inc.*, 2009 U.S. Dist. LEXIS 47898 at *25 (D. Minn. June 4, 2009) (dismissing opt-ins who failed to provide timely discovery responses).

Here, there is nothing in the record that suggests that a lesser sanction, such as ordering these opt-in Plaintiffs to respond, would be effective. Rather, the record shows that most of these recalcitrant opt-ins have not responded to contacts from their attorneys, have not provided current contact information, or have affirmatively indicated that they have no wish to participate in discovery. Issuing an order compelling Plaintiffs to respond to discovery and then waiting for these Plaintiffs to violate it will only further delay the progress of the case. Moreover, a sanction such as barring these opt-ins from testifying at trial will not cure the prejudice to Defendants because, as discussed above, it is likely that these opt-ins' indifference to this lawsuit corresponds with weak claims and merely barring their testimony will only serve to strengthen the remaining pool of opt-in testimony. These opt-in Plaintiffs should not be permitted to simply sit on the sidelines, ignore their discovery obligations, and hope to receive any form of potential damages. Therefore, their claims should be dismissed.

## LOCAL RULE 7.1 CERTIFICATION

Under Local Rule 7.1(a)(3), undersigned counsel certifies that Defendants' counsel conferred with Plaintiffs' counsel regarding Defendants' motion, and the motion is opposed.

Dated:  August 4, 2014

By:      _/s/ Aaron Reed_____
Patrick G. DeBlasio, FL Bar No. 871737
E-mail: *pdeblasio@littler.com*
Aaron Reed, FL Bar No. 0557153
E-mail: *areed@littler.com*
LITTLER MENDELSON, P.C.
333 S.E. 2nd Avenue, Suite 2700
Miami, Florida  33131
Tel:  (305) 400-7500; Fax: (305) 603-2552

John A. Ybarra (admitted *pro hac vice*)
E-mail: *jybarra@littler.com*
Amy S. Ramsey (admitted *pro hac vice*)
E-mail: *aramsey@littler.com*
Michael J. Lehet (admitted *pro hac vice*)
E-mail: *mlehet@littler.com*
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, Illinois 60654
Tel: (312) 372-5520; Fax: (312) 372-7880

Gerald Maatman, Jr. (admitted *pro hac vice*)
E-mail: *gmaatman@seyfarth.com*
Matthew Gagnon (admitted *pro hac vice*)
E-mail: *mgagnon@seyfarth.com*
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
Tel: (312) 460-5000; Fax: (312) 460-7000

Attorneys for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 4th day of August, 2014,  a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

*/s/ Aaron Reed*

**David H. Lichter**
E-mail: dlichter@hlglawyers.com
**J. Paxton Marshall**
E-mail: pmarshall@hlglawyers.com
HIGER LICHTER & GIVNER
18305 Biscayne Boulevard, Suite 402
Aventura, Florida 33160

**Ted Trief**
E-mail: ttrief@triefandolk.com
**Barbara E. Olk**
E-mail: bolk@triefandolk.com
**Stan Gutgarts**
E-mail: sgutgarts@triefandolk.com
**Shelly L. Friedland**
E-mail: sfriedland@triefandolk.com
**Caitlin Duffy**
E-mail: cduffy@triefandolk.com
TRIEF & OLK
150 East 58th Street, 34th Floor
New York, New York 10155

**Peter S. Pearlman**
E-mail: ap@njlawfirm.com
**Alex Pisarevsky**
E-mail: psp@njlawfirm.com
**David Adelsberg**
E-mail: da@njlawfirm.com
**Erika R. Piccirillo**
E-mail: ep@njlawfirm.com
COHN LIFLAND PEARLMAN HERMANN & KNOPF, LLP
Park 80 Plaza West One
250 Pehl Avenue, Suite 401
Saddle Brook, New Jersey

ATTORNEYS FOR PLAINTIFFS

Firmwide:127923789.3 069299.1040