UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61742-CIV-DIMITROULEAS

AMANDA MATHIS, ET AL.,

                                                                                   Magistrate Judge Snow

    Plaintiffs,
vs.

DARDEN RESTAURANTS, ET AL.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DECERTIFY COLLECTIVE ACTION

THIS CAUSE is before the Court upon Defendants' Motion to Decertify Collective Action (the "Motion") [DE 940], filed herein on June 27, 2014. The Court has carefully considered the Motion [DE 940], the Response [DE 965], the Reply [DE 984], the Notice of Supplemental Authority [DE 992], and the record herein. The Court has heard argument of counsel and is otherwise fully advised in the premises.

### I.    BACKGROUND

This is an action under the Fair Labor Standards Act ("FLSA"). The defendants are Darden Restaurants, Inc. ("Darden"), GMRI, Inc. ("GMRI"), RARE Hospitality International, Inc. ("Rare International"), Rare Hospitality ("Rare Management"), N and D Restaurants, Inc. ("N&D"), Darden SW LLC ("Darden SW"), and Florida SE, Inc. ("Florida SE" and together with Darden, GMRI, Rare International, Rare Management, N&D and Darden SW, "Defendants"). Darden is a Florida corporation that—either directly or indirectly—owns the remaining Defendants, which respectively do business as restaurants under the following names: Bahama Breeze, Olive Garden, Red Lobster, Seasons 52, Longhorn Steakhouse (the "Brands").

The plaintiffs ("Plaintiffs") are employees who worked at various locations of the Brands throughout the country.

Plaintiffs allege two overarching categories of FLSA violations by Defendants. First, Plaintiffs allege that they performed varying hours of off-the-clock work. Specifically, Plaintiffs claim that Defendants implemented a uniform policy of manipulating the DASH system, which tracks all hours worked. Defendants' managers allegedly restricted Plaintiffs from recording time in the DASH system before or after certain pre-designated shift hours. Consequently, Plaintiffs performed compensable work before and after their official shifts but could not record or get paid for that work.

Second, Plaintiffs allege that Defendants impermissibly imposed a "tip credit" on certain hours. Under the applicable law, employers may utilize a tip credit to lower minimum wages for positions that earn tips. However, the tip credit cannot be claimed if more than 20% of an employee's total work involves non-tipped work related to tipped work. Plaintiffs allege that they performed "side work" (e.g. rolling silverware; refilling sugar, salt, pepper, and ice; cleaning booths, lights, and windows; vacuuming; and sweeping) more than 20% of the time but were subjected to a lowered wage pursuant to the tip credit.

On September 6, 2012, Plaintiffs initiated this action against Defendants. On July 12, 2013, Judge Rosenbaum conditionally certified a class of servers and bartenders employed at Defendants' Brands between September 6, 2009, and September 6, 2012. The putative class included over 218,000 employees. To date, over 20,000 individuals have opted-in (the "Opt-In Plaintiffs").

On May 20, 2014, the action was transferred to the undersigned. Through the instant Motion [DE 940], Defendants now seek decertification of the collective action.

## II.     APPLICABLE LAW

Section 216(b) of the FLSA provides that an action for unpaid overtime compensation may be maintained by "any one or more employees for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Eleventh Circuit has endorsed a two-tiered approach to certification of collective actions under Section 216(b). *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1219 (11th Cir. 2001). In the first stage, called a "notice stage," the district court, using a "fairly lenient standard," makes an initial determination as to whether to conditionally certify the proposed class. *Id.* at 1218. At the notice stage, "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Id.* (quoting *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1994)).

The second stage "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* (quoting *Mooney*, 54 F.3d at 1213-14). On a motion to decertify, plaintiffs must prove that class members are similarly situated and must demonstrate a reasonable basis for their claim of classwide FLSA violations. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096-97 (11th Cir. 1996). At this decertification stage, plaintiffs bear a heavier burden than at the initial stage. *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003). "[L]ogically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). "[A]s more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). Nevertheless, there are no "bright lines in defining similarly." *Id.*

3

When evaluating whether class members are similarly situated, courts typically consider: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Anderson*, 488 F.3d at 953. "The three factors of this analysis "are not mutually exclusive – there is considerable overlap among them. Each factor directly influences the others." *Knott v. Dollar Tree Stores, Inc*., 897 F. Supp. 2d 1230, 1234 (N.D. Ala. 2012).

"A plaintiff may satisfy [its] burden by providing sufficient evidence showing [that the employer] engaged in a policy or pattern of FLSA violations. Thus a plaintiff can demonstrate that other employees are similarly situated by pointing to a common scheme, plan, or policy." *Pares v. Kendall Lakes Automotive*, No. 13–20317–CIV, 2013 WL 3279803, at *6 (S.D. Fla. June 27, 2013) (internal citations and quotations omitted). Alternatively, "a plaintiff may establish that others are similarly situated without pointing to a particular plan or policy" if the plaintiff "make[s] some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Id.* (internal citations and quotations omitted). "Ultimately [ ] the Court must determine whether, based upon the particular facts of the case, the similarities among the putative class members are sufficient so that it is more practical, efficient, and fair to proceed as a collective action rather than requiring separate actions." *Id.* (internal quotations omitted).

### III.   DISCUSSION

As stated, there are three relevant factors for the Court's determination of whether the Opt-In Plaintiffs are similarly situated: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual

to each plaintiff; and (3) fairness and procedural considerations. The Court will consider each factor in turn.

A.  **Disparate Factual and Employment Settings of Individual Plaintiffs**

Defendants note that the 20,000-plus Opt-In Plaintiffs worked in different positions at different Brands in different locations under different policies implemented by different managers. The liability and damage calculations for each individual Opt-In Plaintiff depend on whether that individual was a server or a bartender; the individual's rate of pay; the individual's location; whether the Brand took a tip credit at that location; the number of hours worked per week; whether the work performed was tip-producing; the time of day the non-tip-producing work occurred; and the length of the shift. Moreover, Defendants indicate that managers differed vis-à-vis policies for off-the-clock work and that those differences existed even between managers at the same Brand location. Given these drastic variations between the Opt-In Plaintiffs' circumstances, Defendants submit that this factor weighs in favor of decertification.

In response, Plaintiffs maintain that the similarities outweigh the differences and that variations in location, shift, and time spent on particular tasks by each employee should not defeat certification. More specifically, Plaintiffs note that they held the same job titles (e.g. servers or bartenders); performed the same basic duties under centrally-generated guidelines and handbooks; and were subject to the same training, time-keeping, disciplinary, complaint, and payroll systems. Moreover, Plaintiffs contend that Defendants had a uniform pattern and practice of encouraging managers to save on labor by requiring or tolerating off-the clock work. Plaintiffs further contend that Defendants cannot escape liability simply because managers differed in their practices.

For the following reasons, the Court finds that this factor weighs in favor of decertification. The determination of whether individual plaintiffs have disparate factual and employment settings may involve a variety of considerations, including the following:

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Whineglass v. Smith*, No. 07–12398, 2013 WL 2237841, at *7 (M.D. Fla. May 21, 2013). Decertification may be appropriate where "contradictory testimony indicates that collective treatment for individuals who had worked under different [managers] would demand so much individual inquiry that the purpose behind collective action would be eviscerated." *Illano v. H & R Block E. Enters.*, No. 09–22531–CV, 2010 WL 9553051 (S.D. Fla. Nov. 4, 2010).

Here, the Opt-In Plaintiffs have disparate factual and employment settings. They vary between bartenders and servers. They work across 1,995 restaurants spread across fifty (50) states. The relevant policies and practices as to off-the-clock work and wages differ by job title, state, Brand, specific restaurant, and manager. For example, Olive Garden and Red Lobster do not take the tip credit for bartenders in Delaware, Kentucky, Maine, Michigan, New Hampshire, North Dakota, or Wyoming. Bahama Breeze and Seasons 52 servers and bartenders, on the other hand, are subject to the tip credit after closing but receive the full minimum wage before the restaurants open.

Furthermore, the Opt-In Plaintiffs vary in terms of asserting a single claim or combination of claims relating to (1) the tip-credit, (2) off-the-clock work, (3) and/or overtime. There are 20,255 Opt-In Plaintiffs, and their individual claims vary as follows:

- Opt-In Plaintiffs with all three claim types:      5,024

- Opt-In Plaintiffs with tip-credit and off-the-clock claims only: 6,195
- Opt-In Plaintiffs with tip-credit and overtime claims only: 967
- Opt-In Plaintiffs with off-the-clock and overtime claims only: 418
- Opt-In Plaintiffs with tip credit claims only: 5,124
- Opt-In Plaintiffs with off-the-clock claims only: 1,537
- Opt-In Plaintiffs with overtime claims only: 98

Thus, the Opt-In Plaintiffs differed in job titles, worked across numerous locations, experienced varying policies and practices, and engaged in disparate working conduct giving rise to a variety of claim combinations. The Court concludes that the Opt-In Plaintiffs have disparate factual and employment settings; therefore, the first factor of the analysis weighs heavily in favor of decertification.

**B.     The Various Defenses Available to Defendants That Appear To Be Individual To Each Plaintiff**

Defendants assert that they have multiple individualized defenses that preclude collective adjudication. For example, Defendants have defenses that specific class members did not work off-the-clock, received managerial instructions that were outside the scope of authority and directly contrary to well-established policy and practice, voluntarily engaged in off-the-clock work in defiance of Defendants' official policies, and/or unreasonably failed to avail themselves of curative steps provided by the employer to recover unpaid compensation.

In response, Plaintiffs submit that the Opt-In Plaintiffs shared substantial commonalities with respect to their job duties and circumstances. Therefore, although there may be some factual distinctions between Opt-In Plaintiffs, the material aspects of Defendants' individualized

defenses can be determined on a classwide basis. Plaintiffs additionally note that other courts have tried similar defenses on a classwide basis.

The Court finds that this factor weighs in favor of decertification. The Plaintiffs vary significantly in terms of hours worked, type of work performed, amount of compensation for that work, and treatment by management. The success or failure of the applicable defenses will turn upon those distinctions. The defenses require consideration of an individual Opt-In Plaintiff's total hours worked, total compensation, type of work, and subjection to a tip-credit rate. Those material inquiries cannot be generalized across 20,255 servers and bartenders who worked across 1,995 distinct restaurant locations, each with unique practices as to side work and clock-in policies. Although some defense issues—such as the existence and communication to employees of uniform nationwide policies—could be determinable on a classwide basis with relative efficiency, the majority of material issues underlying the available defenses are highly individualized.

**C.      Fairness and Procedural Considerations**

Defendants submit that the individualized liability questions for the Plaintiffs would render this collective action unmanageable. In support, Defendants note that the 20% tip-credit rule requires inquiry into the content of and time spent on each employee's side work duties. Defendants additionally assert that the extrapolation methods proposed by Plaintiffs' expert do not reliably account for the individualized circumstances for each Plaintiff and will result in windfalls for some Plaintiffs and shortchanging for others. According to Defendants, therefore, the ultimate result will be an impermissible "all or nothing" determination that will prejudice either Defendants or Plaintiffs without accounting for the actual facts.

In response, Plaintiffs contend that the Court has various methods for managing procedural issues and facilitating classwide adjudication. For example, the parties and the Court could utilize objective criteria, survey and representative evidence, and a damage model to facilitate determinations of liability and damages. Representative Opt-In Plaintiffs could appear as witnesses. Liability and damages could be bifurcated and subclasses could be designated. Additionally, the Court could appoint a special master.

Furthermore, Plaintiffs assert that decertification would cause significant problems for the federal judicial system. Specifically, decertification would inundate the federal courts with more than 19,000 separate cases arising from the same practices by the same Defendants. Accordingly, Plaintiffs submit that collective adjudication is a fair and manageable procedure for this action.

The Court finds that collective adjudication would not be fair or manageable. The circumstances at the thousands of different restaurants and the experiences of the tens of thousands of Opt-In Plaintiffs are too dissimilar to justify a collective action. The use of representative evidence or damage models[1] would not account for material distinctions between Defendants' liability to different Opt-In Plaintiffs. Defendants would face all-or-nothing liability for large groups of employees, despite those employees' dissimilar working conditions. Individual Opt-In Plaintiffs would not receive recoveries based on their individual experiences. Rather, they would be grouped with other Opt-In Plaintiffs and receive either windfalls or insufficient recoveries.

---

[1] The Court has yet to rule on Defendants' Motions to Strike [DE-902, 975] and Motion to Exclude [DE-953]; the granting of any or all of those motions would result in additional grounds to decertify.

To avoid those inequities, the Court would be forced to utilize numerous subclasses,[2] individualized evidence, individualized liability determinations, and individualized damage determinations. Under those circumstances, a collective action no longer poses benefits in terms of manageability or fairness and is not preferable to individual actions spread across the appropriate federal venues nationwide. Thus, fairness and procedural considerations weigh in favor of decertification.

In sum, each of the three relevant considerations weighs in favor of decertification. Although conditional certification was certainly warranted under the "fairly lenient standard" at the outset of the action, the developed record now demonstrates that the Opt-In Plaintiffs are not similarly situated. There are too many material dissimilarities between Opt-In Plaintiffs' employment circumstances in terms of job titles, job locations, tip-credit rates, off-the-clock policies, and managerial conduct. Consequently, it is not more practical, efficient, or fair to proceed as a collective action.

Finally, the Court notes that decertification is consistent with the applicable precedent in the Eleventh Circuit. In *Morgan*—a recent published opinion addressing FLSA (de)certification—the Eleventh Circuit found that the district court had not abused its discretion by denying the defendants' motion to decertify. *Morgan*, 551 F.3d at 1262. In so holding, the Eleventh Circuit instructed that district courts should consider the three factors of disparate factual and employment settings, individualized defenses, and fairness and procedural considerations. *Id.* at 1261-62. Acknowledging that the district court had considered those factors, the Eleventh Circuit noted the district court's findings that the defendants treated the class of store manager plaintiffs uniformly in terms of job duties and overtime pay. *Id.* at 1262-

---

[2] The subclasses would have to account for job title (e.g. bartender or server), tip-credit versus non-tip credit states, and Brand (Bahama Breeze, Olive Garden, Red Lobster, Seasons 52, Longhorn Steakhouse).

63. The Eleventh Circuit concluded that "[g]iven the substantial similarity of the class members' jobs and uniform corporate treatment of the store managers, it would not serve the interest of judicial economy to require these overtime-pay claims to be adjudicated in 1,424 individual trials" and that "[b]ased on the record in this case, we cannot say the district court abused its discretion in denying Family Dollar's motion for decertification." *Id.* at 1265.

Here, the Court has considered the relevant factors and, based on the record as whole, has determined that each factor favors decertification. Unlike *Morgan*, this case does not involve uniform treatment by Defendants or substantial similarity between the Opt-In Plaintiffs' employment circumstances. Rather, the servers and bartenders comprising the 20,255 Opt-In Plaintiffs worked under varying policies as to a tip-credit wage and off-the-clock work in 1,995 different restaurants across the country. Individual managers in those restaurants could control the amount and type of work performed on-the-clock or off-the-clock, despite any uniform policy stated by Defendants. Accordingly, the facts are distinguishable from those in *Morgan*, and the relevant factors support decertification.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion [DE 940] is **GRANTED**;

2. This action is **DECERTIFIED**;

3. The Opt-In Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE** to file separate suits; and

4. If any Opt-In Plaintiffs desire to bring individual suit, they must do so within the appropriate period of time defined by law.[3]

---

[3] In the December 7, 2012, Scheduling Order [DE 47], Judge Rosenbaum ordered that "[a]ny claim that would otherwise expire during the class-certification period will be tolled during that period." Furthermore, when

11

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this 1st day of September, 2014.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record

---

conditionally certifying the collective action, Judge Rosenbaum held that "[t]he statute of limitations will be tolled such that claims originating up to three years prior to the filing of the Complaint will not be barred." *See Alequin v. Darden Restaurants, Inc*., No. 12–61742–CIV, 2013 WL 3939373, at *7 n.3 (S.D. Fla. July 12, 2013).